## GLANSMAN *v.* LEDBETTER ET AL.

[No. 23,725.   Filed March 8, 1921.   Rehearing denied May 10, 1921.]

1.  EVIDENCE.—*Judicial Notice.—Jurisdiction of Circuit Court.— Adoption Proceedings.— Statutes.*— The Supreme Court judicially knows that the Morgan Circuit Court is a court of general jurisdiction with full power and authority under §868 Burns 1914, §823 R. S. 1881, and §3098 Burns 1914, Acts 1913 p. 600 to hear and determine a proceeding for the adoption of heirs.   p. 508.

2.  HABEAS CORPUS.—*Return.—Sufficiency.—Pleading Judgment. —Jurisdiction.*—In a *habeas corpus* proceeding by the mother to obtain the custody of a minor child which had been adopted by respondents, a return averring that respondents claimed the custody of the child by virtue of a judgment of adoption, in full force and effect, rendered by a circuit court, sufficiently shows that such court had jurisdiction to render such a judgment, without pleading facts showing jurisdiction, since circuit courts are courts of general jurisdiction with full power to hear and determine such proceedings.   p. 508.

3.  HABEAS CORPUS.—*Return.—Sufficiency.—Failure to Set Out Judgment of Adoption.— Statutes.*— Although §1173 Burns 1914, §1116 R. S. 1881, provides that the return to a writ of *habeas corpus* must state the authority or cause of restraint of the party in custody, and, if the authority be in writing, shall contain a copy, etc., yet, as a proceeding involving the custody of a minor child is governed largely by the discretionary powers of the court, the failure of respondents, who averred that they were the adoptive parents, to set out in the return the judgment of adoption, is unimportant, the court's action in awarding the custody of the child not being controlled by the averments or sufficiency of the return.   p. 509.

4.  HABEAS CORPUS.—*Custody of Infant.—Welfare of Child.*—In *habeas corpus* proceeding to obtain the custody of an illegitimate child which respondents claimed to have adopted, the welfare of the child is the controlling element.   p. 516.

5.  DOMICILE.—*Domicile of Illegitimate Child.*—The domicile of an illegitimate child, in the absence of desertion, is that of its mother, who is its natural guardian and has the natural right to custody.   p. 516.

6.  BASTARDS.— *Custody of Illegitimate Child.*— The mother, as the natural guardian, has the right to custody of her illegiti-

mate child, and the court will be slow to disregard such right, unless impelled to do so for the best interests of the child. p. 516.

7. ADOPTION.— Adoption of Infant.— Notice to Mother.— The mother of an illegitimate child is entitled to notice of proceedings for its adoption instituted by persons in whose custody she left the child, such notice being essential to give the court jurisdiction to act upon the petition for adoption and to render a valid judgment. p. 516.

8. ADOPTION.— Adoption of Infant.— Statute.— Construction.— Section 3098 Burns 1914, Acts 1913 p. 600, as to the adoption of infants, is in derogation of common law and must be strictly followed in all essential particulars.   p. 516.

9. ADOPTION.— Adoption of Infant.— Desertion.— Constructive Notice.— Jurisdiction.— Statutes.— The facts required to be shown by §3098 Burns 1914, Acts 1913 p. 600, relating to the adoption of deserted infants, to obtain notice of adoption proceeding by publication, are jurisdictional.   p. 517.

10. ADOPTION.—Adoption of Infants.—Nature of Proceedings.— Notice.—Although a judgment of adoption is the conclusion of a special statutory proceeding frequently referred to as in the nature of a proceeding in rem, the statute contemplates a proceeding in which the living natural parties are regarded as adversary parties.   p. 517.

11. HABEAS CORPUS.— Judgment. — Conclusiveness. — Collateral Attack.—Ordinarily a judgment which on its face shows no jurisdictional defects and is supported by recitals from which it may be inferred that the court found that it had jurisdiction both of the person and the subject-matter, is impervious to collateral attack, and this rule is applicable where a judgment in adoption proceedings is attacked on habeas corpus. p. 518.

12. JUDGMENT.—Collateral Attack.—Fraud.—An attack upon a judgment for fraud in its procurement is regarded, not as a collateral attack, but as a direct attack, which is permitted, notwithstanding the judgment questioned may appear on its face regular and valid, for only in rare instances would the judgment itself disclose the fraud upon the parties or upon the court.   p. 518.

13. ADOPTION.— Adoption of Infants.— Judgment.— Conclusiveness.—Fraud.—In a habeas corpus proceeding by the mother to obtain the custody of her illegitimate child from respondents, in whose care the child had been left, and who had adopted it, held that, as respondents gave only constructive notice pursuant to §3098 Burns 1914, Acts 1913 p. 600, the judgment of adoption was not conclusive, but was open to attack for want

Glansman *v.* Ledbetter—190 Ind. 505.

of jurisdiction on account of respondents' fraud in stating that the mother's whereabouts were unknown, etc., when they well knew how to and had often communicated with her, etc., thereby procuring notice by publication. p. 518.

14. HABEAS CORPUS.—*Judgment of Adoption.—Conclusiveness.—Fraud.*—Even though in a *habeas corpus* proceeding by the mother to obtain the custody of her illegitimate child from respondents, in whose care the child had been left, and who adopted it, the welfare of the child is of primary importance, where the lower court, which found for respondents, failed to set aside the judgment of adoption, although it was open to impeachment for fraud, *held* that the judgment in favor of respondents should be reversed. p. 520.

From Morgan Circuit Court; *Alfred M. Bain,* Judge.

Action by Mary E. Glansman against Sidney Ledbetter and wife. From a judgment for defendants, the plaintiff appeals. *Reversed.*

*Edward W. Little, Earl W. Little, Harding W. Hovey* and *Frank S. Roby,* for appellant.

*N. A. Whitaker, O. W. Smith* and *S. C. Kivett,* for appellees.

MYERS, J.—Appellant petitioned the Morgan Circuit Court for a writ of *habeas corpus* to obtain the custody of her child, four years of age, alleged to be unlawfully detained by appellees. The writ was issued, and for a return appellees averred that at the February term, 1918, of the Morgan Circuit Court, such proceedings were had that, by the judgment of that court, respondents adopted the child as their own and by virtue of this judgment they claim the right to its exclusive custody. Appellant filed exceptions to the return, which were disallowed, and a reply alleging new matter in avoidance of the return. A trial was had which resulted in a judgment in favor of respondents. For a reversal of that judgment, appellant has assigned as errors the action of the court in overruling her exceptions to the return, and in overruling her motion for a new trial.

The exceptions challenged the return for want of facts in that: (1) It failed to set out the judgment; (2) it failed to show that the court rendering the pretended judgment had jurisdiction of the subject-matter or of the parties; (3) it failed to state facts showing that the Morgan Circuit Court had jurisdiction to render a judgment of adoption.

The question thus presented is one of pleading. The return was signed and verified by the respondents, in which it appears that they relied entirely on a judgment of adoption rendered by the Morgan Circuit Court. The return does not include a copy of the judgment, and this omission furnishes the principal basis for the exceptions. Looking to §1173 Burns 1914, §1116 R. S. 1881, in so far as the same is material, it provides that: "The return must be signed and verified by the person making it, who shall state: First. The authority or cause of the restraint of the party in his custody. Second. If the authority be in writing, he shall return a copy and produce the original on the hearing."

We judicially know that the Morgan Circuit Court is a court of general jurisdiction with full power and authority to hear and determine a proceeding for the adoption of heirs. §868 Burns 1914, §823 R. S. 1881; §3098 Burns 1914, Acts 1913 p. 600. Hence as to the question of that court's jurisdiction to render such judgment, it was only necessary for the respondents to show that they were claiming the custody of the child by virtue of a judgment of adoption, at that time in full force and effect, rendered by the Morgan Circuit Court. *Jackson* v. *Smith* (1889), 120 Ind. 520, 22 N. E. 431; *Lucas* v. *Hawkins* (1885), 102 Ind. 64, 1 N. E. 358; *Spangle* v. *Spangle* (1908), 41 Ind. App. 297, 83 N. E. 720.

But the failure to make a copy of the judgment relied on a part of the return was an omission for which the

exceptions ordinarily should be allowed. Such
3.   failure is regarded unimportant only because this
proceeding involves the welfare of an infant and
is governed largely by the discretionary powers of the
court, as distinguished from proceedings for the release
of a party held upon a criminal charge.   For, as said in
the case of *Bullock* v. *Robertson*, (1902), 160 Ind. 521,
65 N. E. 5:   "When an infant is brought into court in
obedience to a writ of *habeas corpus*, it is in the custody
of the court, subject to its disposition, and this power
rests upon the broad foundation of the general jurisdic-
tion of the court over infants."   Consequently the
court's action in awarding the custody of an infant is
not controlled by the averments or sufficiency of the
return.   Hochheimer, Custody of Infants (3d ed.) §57.

Appellant, in support of her motion for a new trial,
insists that the decision of the court is not sustained by
sufficient evidence, and is contrary to law.

With reference to the pleadings, we may add that
the reply proceeded upon the theory:   (1) That the
Morgan Circuit Court had no jurisdiction of the person
of appellant, or the subject-matter of the proceedings
which resulted in the alleged judgment of adoption;
(2) that the alleged judgment of adoption was pro-
cured by the fraud of respondents on the court render-
ing the judgment.

Appellees take the position, as we understand them,
that this appeal must fail for two reasons:   (1) Be-
cause the undisputed facts show that this proceeding
was a collateral attack upon a judgment, fair upon its
face, and rendered by a court of general jurisdiction;
(2) if the judgment of adoption is void, the writ issued
in this proceeding brought the child within the custody
of the court for its disposition, under its general juris-
diction over infants, and its action in the premises must
be regarded as for the best interests of the child.

The general finding of the court in part states: "That said defendants are entitled to the care and custody of the child, and that her correct name be Kathleen Ledbetter, as hereinbefore ordered by the judgment of this court." The judgment in substance was that the best interests of the child required that it be left in the permanent care and custody of appellees.

In view of the entire record before us, it would seem that the former proceeding, which resulted in the adoption judgment, was influential in the decision of the present case. On the face of the record of that case, we are not surprised that the court would hesitate to change the status of the child thus fixed, but, should it appear that the court did not have jurisdiction over the person of a necessary party, or of the subject-matter, or that such judgment was in fact procured through the fraud of the successful party, it should not be allowed to stand, if properly attacked.

There is practically no conflict in the evidence as to the material facts. Therefore, for the purpose of a better understanding of this case, we incorporate the following statement: On April 19, 1915, Mary E. Aull became the mother of an illegitimate child, and gave it the name of Kathleen Aull. The mother, at the time the child was born, and theretofore and thereafter until August, 1919, resided with her parents at No. 10 North Rural street, Indianapolis, Indiana. On March 17, 1916, at that address, the child was by the brother of its mother, and with the mother's consent, given over to the respondent herein, Mrs. Nellie Ledbetter, for care and attention, at an agreed price of $2 per week, which was fully paid up to April, 1918, with the exception of $60. At the time the child was given over to Mrs. Ledbetter she was told that its name was Kathleen Merkle, and that its mother's name was E. Merkle, and for matters regarding the child she was instructed to write

to Mrs. Aull, or the mother, E. Merkle, at No. 10 North Rural street, Indianapolis, Indiana. Mrs. Ledbetter thereafter did write to Mrs. Aull and to the mother as E. Merkle at that address, and received letters, money, clothing, shoes and other articles for the child as coming from the Aulls and Mrs. Merkle, up to August, 1919. On January 7, 1919, Mary E. Aull, the mother of the child, was married to W. W. Glansman, and in August, 1919, she equipped with household furniture a four-room home with bath at Jersey City, New Jersey, at which point, with her husband, she has since continued to reside. On August 22, 1917, the mother of the child wrote Mrs. Ledbetter, inclosing $5 "as part payment on Kathleen's board," and, after making excuses for not being able to send more money, said:

"I trust baby is well and I only hope things will change so that I can come down, but I know when I do it will be much harder for me to leave her, for as it is, I haven't seen her but I am always longing for her and I hope I can have her soon. Will send you more in next letter. Thanking you for your kindness, and with love and kisses to the babe."

Mrs. Ledbetter testified that she knew Mrs. Aull, but did not know that she was the grandmother, but thought she was. She did not know the mother of the child was named Aull, but knew she was of the same family. She knew that the young man who gave her the child, and afterwards died in France, was the brother of the mother. She received a number of letters signed "Mrs. Merkle" which were sent through Mrs. Aull, and, while she suspected that Mrs. Merkle was Mrs. Aull's daughter, she did not know it. In the fall of 1917 she had her attorney of Martinsville write to Mrs. Aull at No. 10 North Rural street, Indianapolis, Indiana, in substance saying that Mrs. Ledbetter had been in to see him with reference to Kathleen and it was necessary

that something be done toward a permanent arrangement for the child, and that they were willing to adopt the child, but, if this was not satisfactory, they wanted some disposition made at once, and would be pleased to have the correct name and address of the mother. On October 23, 1917, he again wrote in substance that he had received a letter which did not give the desired information, and while there was no desire to inconvenience or recall any unpleasant circumstances concerning the child, yet the Ledbetters were "fully informed as to the mother of this child, and if necessary, we will make the publication required by law as to this matter in order to get proper.notice. We felt, however, that if your daughter, the mother of this child, did not desire this notoriety we would avoid this publication." On November 7, 1917, this same attorney wrote Mrs. Aull:

"It seems that you have a disposition to ignore our request for some settlement with reference to the child now in the possession of Mr. and Mrs. Ledbetter. You will recall that you agreed to take care of this matter, but have failed to do so. We regret that it becomes necessary to take action in this matter, and I beg to say that unless some satisfactory and definite arrangement is made by the 15th of this month, we will take action in this matter."

The attorney who wrote these letters, in substance, testified that they were not written with the idea of preparing a petition on behalf of the Ledbetters for the adoption of the child, but for the purpose of obtaining the name and address of the mother with the thought of taking the matter of settlement up with her directly, but never wrote to Mrs. Merkle. From the information received from the Ledbetters "I felt certain I was writing.to the grandmother of the child." It appears that the grandmother of the child, in 1916, was at the home of the Ledbetters, and while there Mrs. Ledbetter said

that a party in Indianapolis would like to adopt the child and Mrs. Aull "told her that the child could never be adopted at that time. At no time could the child be adopted; I would take it home." Mr. Aull, grandfather of the child, was in ill health and confined to his bed a considerable part of the time, and did not know of the child. They kept all knowledge of the child from him, because of threats made by him in case anything of the kind should ever happen. The evidence without question shows that there was a concerted attempt on the part of the Aull family, including the mother, to conceal the fact that she was the mother. There is also undisputed evidence to the effect that the mother, in 1917, was at the home of the Ledbetters to see the child, and on several occasions, accompanied by her sister, went to the gate leading to the Ledbetter home, and the sister would go in and get the child and take it out to its mother for a short time and then return it to Mrs. Ledbetter. On February 12, 1918, appellees filed their verified petition in the Morgan Circuit Court, stating, among other things, that they desired to adopt as their child Kathleen Merkle, a female infant of the age of two years and ten months, owner of no property, real or personal, and a resident of Morgan county, Indiana; that the father of the child was unknown, and the mother at the time of its birth was unmarried and had not been married prior thereto; that the whereabouts of the mother of the child, E. Merkle, was unknown; that the child had been deserted and abandoned by its mother and had no guardian, and was now living with petitioners, who are residents of Morgan county, and who are able to continue to support it. An affidavit of Irel H. Sadler was filed, stating that he was not interested in the matter of the adoption of Kathleen Merkle by the Ledbetters, and that he is "informed and verily

believes that the mother of Kathleen Merkle is not a resident of the State of Indiana, and that her said residence is unknown." It further appears that the notice to E. Merkle as the mother of Kathleen Merkle, by publication in the Martinsville Republican, a weekly newspaper, in its issues of February 21, 28, and March 7, 1918, was given of the filing of the petition by the Ledbetters to adopt Kathleen Merkle as a deserted minor child, and of the filing of the affidavit that E. Merkle, its mother, was not a resident of the State of Indiana, and of the day fixed, and the court where the petition would be heard. Thereafter, on April 29, 1918, it is made to appear from an order-book entry of the Morgan Circuit Court that the parent, E. Merkle, failing to appear, was called and defaulted. The cause was then submitted and the evidence heard, and the usual adoption judgment rendered in favor of petitioners. With reference to this proceeding Mrs. Ledbetter testified that: "When I filed this petition asking the court to give me this child I knew where these people lived. I signed the petition that I did not know the residence of these people. I know Irel H. Sadler. I told him that I did not know where these people lived. With the exception of two letters from Chicago and one from Ohio, all the information I had about this mother came from No. 10 North Rural street, Indianapolis, Indiana. I knew the sister of the mother of the child, and while I did not know that this sister was an aunt, I always thought she was its aunt." It unquestionably appears that many letters of a most friendly character passed between Mrs. Ledbetter and the aunt of the child during the years 1917, 1918 and 1919, and Mrs. Ledbetter knew that this aunt had frequently contributed clothing and toys for the child. During these same years there was some correspondence between Mrs. Ledbetter, Mrs. Aull and Mrs. Merkle, all with reference to the child,

but none of the letters to the aunt, Mrs. Aull, or Mrs. Merkle mentioned the adoption proceedings. In 1918, and after the judgment of adoption, the Aulls paid Mrs. Ledbetter $25 at one time and $10 at another on account of the child's keep. On May 21, 1919, Mrs. Ledbetter wrote both Mrs. Aull and the aunt of the child requesting that they send her $60, and at the same time gave them instructions for making dresses for the child and for clothing generally. About the middle of August, 1919, this sister, with the husband of the child's mother, went to the home of the Ledbetters for the purpose of making a payment on the amount due for the child's keep, and to adjust the balance due preparatory to taking the child away. It was then that she first learned that the Ledbetters had adopted it. She was so informed by Mrs. Ledbetter, who told her that the court had given them the child and that they proposed to keep it. The aunt conveyed this information to the mother of the child and to its grandmother, which was their first knowledge of the adoption proceedings and of the judgment. The mother, in a few days after learning the fact that the Ledbetters had adopted the child, consulted attorneys, and the case at bar was commenced. The mother never waived notice, or in any manner, either directly or indirectly, appeared or consented to the adoption proceedings, nor did she have any knowledge of the same until after the alleged judgment had been rendered. As a part of the history of this case, it will be noticed that the attorney who wrote the letters above referred to, and whose advice was originally sought by the Ledbetters, is not shown to have appeared in the adoption proceedings. That case was prosecuted by other attorneys who are not shown to have been advised by the Ledbetters of the facts admittedly known to them concerning the antecedents of the child, nor does it appear that they made any inquiry or did anything

to learn the address of the child's mother, nor did they take any steps other than the newspaper notice to inform any of the parties at the Rural street address of the proposed petition, or of its pendency.

It may be said, as claimed by appellees, that the welfare of the child is the controlling element in this case. Generally speaking, that is true, but under the issues in the instant case, we must conclude that the adoption judgment fixing the status of the child was involved.

4.

The respondents are standing behind this judgment. They are seeking to enforce it against the natural parent and to make it effective to bar such parent's right to custody. Under the facts in this case, the domicile of the child in the absence of its desertion was that of the mother (Story, Conflict of Laws [8th ed.] §46; Field, Law of Infants §19), who was its natural guardian and had the natural right to its custody. These rights, courts will be slow to disregard, unless impelled to do so for the best interests of the child. *In re Van Walters* v. *Board* (1892), 132 Ind. 567, 569, 32 N. E. 568, 18 L. R. A. 431; Church, Habeas Corpus (2d ed.) §454.

5, 6.

To the petition for the child's adoption the mother was entitled to notice as an essential element to give the court jurisdiction to act upon the petition and render a valid judgment. *Dalton* v. *State* (1842), 6 Blackf. 357; *Lee* v. *Back* (1868), 30 Ind. 148; *Copeland* v. *State* (1878), 60 Ind. 394; *In re Van Walters* v. *Board, supra,* 570; *Reg* v. *Nash, In re Cary* (1883), 13 Eng. R. C. 26; 5 Cyc 637.

7.

No other than constructive notice to the mother is claimed, which is said to be sufficient under §3098, *supra.* This statute is the one invoked by the adoption petitioners. It is in derogation of the common law, which made no provision for the

8.

adoption of children (*Humphries* v. *Davis* [1885], 100 Ind. 274, 276, 50 Am. Rep. 788), and it must be strictly followed in all essential particulars. *Citizens' St. R. Co.* v. *Willoeby* (1896), 15 Ind. App. 312, 320, 43 N. E. 1058; *Watts* v. *Dull* (1900), 184 Ill. 86, 56 N. E. 303, 75 Am. St. 141; *Foster* v. *Waterman* (1878), 124 Mass. 592.

It does provide for notice to the parent by publication upon a previous showing in the petition for adoption that the child has been deserted by its parent, that it has no legal guardian, and by affidavit of a disinterested person that the child's parent "is a nonresident of the State of Indiana, or that the residence of such parent is unknown." Such notice, when made pursuant to this statute, is declared to be a "sufficient notification to any surviving parent who has deserted such child, in lieu of appearance in court and consent for such adoption." These facts are required by statute to be shown and they are jurisdictional.

The reply in the instant case challenged the validity of the adoption judgment, on the ground that the court did not acquire jurisdiction of the child's mother, and that the judgment was procured through the fraud of respondents on the court. A judgment of adoption is the conclusion of a special statutory proceeding, frequently referred to in the books as being in the nature of a proceeding *in rem*. 1 C. J. 1383, §50; 1 R. C. L. 602, §10. However this may be, our statute, by which we must be guided, contemplates a proceeding to which the living natural parents are to be regarded as adversary parties, and involves the rendition of a judgment by a court fixing the new status of the child. *Brown* v. *Brown* (1885), 101 Ind. 340, 342. The Morgan Circuit Court has power to exercise both law and equity jurisdiction, and the reply in the instant case was addressed to the equity side of the court, and sought

to set aside the alleged adoption, on the ground of fraud, which involved the court's jurisdiction, not on the merits, but on jurisdiction itself.

An examination of the decided cases will disclose a lack of unanimity as to the circumstances under which a judgment may be impeached for want of jurisdiction. Especially is this true when the judgment upon its face does not show a jurisdictional defect. The judgment of adoption embraced in the case at bar is supported by recitals from which it may be inferred that the court found that it had jurisdiction both of the person and subject-matter to pronounce the judgment. Ordinarily such a judgment is impervious to a collateral attack, and therefore not a subject for investigation in a *habeas corpus* proceeding. Black, Judgments (2d ed.) §256. But as we construe the reply, it brought before the court rendering the judgment of adoption, and to which the situation of the parties had not changed, facts in opposition to its enforcement, amply sufficient upon the theory of fraud in its procurement to constitute a direct attack thereto. In *Cotterell, Admr.,* v. *Koon* (1898), 151 Ind. 182, 185, 51 N. E. 235, it was said that "an attack upon a judgment for fraud in its procurement is regarded as a direct attack, which is permitted, notwithstanding the decree or judgment questioned may appear upon its face in all respects regular and valid. * * * It would certainly be a rare instance in which the decree would disclose the fraud or imposition upon the parties or upon the court." See also, *State* v. *Hindman* (1903), 159 Ind. 586, 591, 65 N. E. 911; *Miedreich* v. *Lauenstein* (1909), 172 Ind. 140, 86 N. E. 963, 87 N. E. 1029.

It unquestionably appears that the respondents, at the time they filed their verified petition, and at the time they procured the nonresident affidavit to be filed and caused the court to make an order

for publication of notice to the child's mother, knew and had known for nearly two years prior thereto that the mother could be found, and that they had communicated with her by letter, at a known address in this state; that she had been to see the child; that she had furnished money on account of a contract for its care and attention; and that they had frequently received letters from her showing a motherly interest and feeling for it. As applicable to these and other facts in this case brought to our attention, we are inclined to apply the principle announced in the case of *Frankel* v. *Gerrard* (1903), 160 Ind. 209, 214, 66 N. E. 687, with reference to the effect of a judgment rendered upon the faith of a false return of a summons induced and brought about by the fraud of the judgment plaintiff.

The procedure pursued by respondents in the adoption proceedings reminds one of a doorstep case supported only by unfortunate circumstances which led the mother, scarcely more than a child herself, to act under the advice of older heads, and which, when explained, were quite sufficient to relieve her from any bad motives in attempting to withhold her true name and address from the respondents. But this mere shadow, under all the circumstances disclosed by this record, cannot rise to the dignity of evidence sufficient to convict this mother of desertion or want of affection or of consent that her rights to the child might forever be foreclosed.

However, as to the single question of the sufficiency of the notice to the mother of the child, we need not and we do not decide, but see *Sullivan* v. *People, ex rel.* (1906), 224 Ill. 468, 79 N. E. 695. For under the facts in this case it was made to appear without contradiction that the facts essential to give the court jurisdiction over the person and of the subject-matter were grounded upon a fraudulent suppression of the truth, and misstatement of facts calculated and apparently in-

tended to deceive the court into assuming jurisdiction
of the particular proceeding and the rendition of a judg-
ment to which the respondents were not entitled except
for the fraud, deception and imposition practiced on the
court. *Booth* v. *Van Allen* (1870), 7 Phila. 401.

Referring to the contention of appellees that, if the
judgment of adoption be void, the judgment in the in-
stant case should be affirmed for the reason that
14. it was based upon the court's general jurisdiction
over infants. This contention seems plausible,
but the fact that the trial court failed to set aside the
adoption judgment, and for aught appearing that issue
was found against the petitioner, which finding we are
convinced is without evidence to support it, and as there
is no rule by which to measure the effect of that judg-
ment on the general conclusion in the case at bar, we
hold that the judgment from which this appeal was
taken should be reversed.

Judgment reversed, with instructions to the trial
court to grant a new trial, and for further proceedings
not inconsistent with this opinion.