ARAMOVICH *v.* DOLES

[No. 30,356. Filed January 22, 1964.]

Paul V. Wycoff and William W. Greeman, both of Batesville, for appellant.

Frank I. Hamilton, of Greensburg, for appellee.

ARTERBURN, J.—This is an action brought by the appellant to adjudge void a judgment of the Decatur Circuit Court entered on January 10, 1929, providing for the adoption of the appellant, Mary Ellen Aramovich (then bearing the name of Mary Ellen McCoy, age five) by Paul Edwin Doles, appellee herein, then the second husband of appellant's natural mother, Helen Newhouse Doles, formerly Helen Newhouse McCoy. The appellant, now age forty, seeks to have her adoption by her stepfather declared void in order to bring proceedings to share in the estate of her natural father, Eugene McCoy, deceased, who was the first husband of appellant's mother.

Appellant relies upon the contention that no consent under the statute at the time (1929) was obtained from the natural father for the adoption.

The statute at the time of the adoption provided that the consent of the father in this case was necessary (with certain exceptions) and reads as follows:

"Consent of parents—Proceedings as to inmates of house of refuge or Indiana Reformatory. If the child is under twenty-one [21] years of age, such court shall not adopt such child, if it have a father or mother living, unless such father or mother appears in open court and gives consent thereto, or unless such father or mother shall file with the clerk of the court his or her verified consent to such adoption: Provided, That if such petitioner show, by two [2] competent witnesses, that the

residence of such father and mother be unknown, then such court may adopt such child: and Provided, further, That if such child be, at the time of filing and hearing such petition, an inmate of the house of refuge for juvenile offenders, or of the Indiana reformatory institution for women and girls, committed thereto by law, for other reason than the conviction of crime or incorrigibility, such petition may be filed in any circuit court or superior court of this state, and upon the filing of the written consent of the board of control or board of managers of such institution, to such adoption, then such court may adopt such child." [Acts 1855, ch. 56, at p. 122, as amended, ch. 53, §1, at p. 81, (1875) and ch. 150, §1, at p. 408 (1913) being Burns' §917, (1926 Revision).]

Appellant grounds her case solely on the theory that there being no consent of the father, the judgment of adoption entered was *void* (as distinguished from voidable) and thus may be collaterally attacked.

On the other hand, the appellee contends that the judgment of adoption is not void or a nullity but is valid on its face and must be recognized at its face value in any collateral proceeding, or other case; that the law does not permit going behind the record of the judgment, and that it bears a presumption of validity.

There is a confusion among authorities as to what constitutes a collateral attack as distinguished from a direct attack. 30A Am. Jur., Judgments, §§844, 851; 17 I. L. E., Judgments, §273.

In this case, however, it is conceded that we are concerned only with a collateral attack on the judgment of adoption, since no judgment may be directly attacked without making all parties thereto, or their successors in interest, parties to the direct attack. 30A Am. Jur., Judgments, §714.

If the natural father in this case were alive, he should have been made a party in a direct attack on the judgment; if not, his estate, as a successor in interest, should have been a party. 17 I. L. E., Judgments, §§273, 276; 1 Am. Jur. 2d., Adoption, §72.

The record shows that representatives of the estate attempted to intervene herein, but were denied such privilege. Appellant, recognizing the law to be as stated, admits that to prevail in this action, which is a collateral attack upon the judgment in the adoption proceedings, the judgment must be shown to be *void* and a nullity, as distinguished from a judgment which is merely defective or voidable. If the judgment is void or a nullity it need not be recognized by any one and, of course, may be collaterally attacked in another section. 17 I. L. E., Judgments §271.

We proceed then to a consideration of whether or not the adoption judgment in question is void and as a result entitled to no respect or validity whatever.

The judgment of adoption in this case reads as follows:

"Civil Order Book - 64
"Nov. term 1928

"In re: Adoption of Mary Ellen Mc Coy No. 11675

"Paul Edwin Doles, having heretofore filed in this court his petition for adoption of Mary Ellen McCoy as his child and heir at law as follows: (H.I.)

"And Helen Newhouse Doles, mother of Mary Ellen McCoy, having come into court and in open court consented in writing to said adoption, which consent is as follows: (H.I.)

"Said petition is now submitted to the court for finding and judgment, and the court having heard the evidence and being duly advised in the premises, finds that the allegations of said petition

are true and that it is for the best interests of said Mary Ellen McCoy that she be adopted by the petioner.

"It is therefore ordered and decreed by the court that said Mary Ellen McCoy be, and she is, hereby adopted as the child and heir at law of said Paul Edwin Doles and that her name be changed to that of Mary Ellen Doles, and it is further ordered that the petitioner pay the cost of this proceeding."

It does not appear in the judgment whether or not, in accordance with the statute, the natural father appeared in "open court" and gave his consent, nor does it appear that other conditions existed with reference to the status of the child which, under the statute, made the father's consent unnecessary. The question then arises: May we, in this collateral proceeding, go behind that judgment and determine whether or not all the facts existed with reference to the consent or non-consent of the father, upon which that court at the time could have entered the judgment of adoption?

There was evidence introduced in the trial court from which some inferences might be drawn that no written consent of the father was filed, since none was found with the court's papers or in the clerk's office in the adoption case. There was also some evidence that the father had said he would never consent to the adoption.

Putting aside, at this time, the question of whether such conversations may be hearsay or would be admissible against his estate, if the estate were party to this action, we return to the original problem of what is the face value of this judgment of adoption in a collateral proceeding.

If the record of the judgment in this case had stated positively that the consent of the father had been obtained or that it had not been obtained (and facts

coming within the exceptions excusing such consent) we would have no question here.

The question is then resolved into whether or not all jurisdictional facts must be recited in a judgment of a court of general jurisdiction in order to make it impervious to collateral attack. In other words, is there a conclusive presumption of jurisdiction of the person in cases of collateral attack, even though the judgment record fails to show such jurisdiction?

Our investigation of the authorities convinces us of the view that a judgment of a court of general jurisdiction may not be impeached by evidence *dehors* the record in a collateral attack thereon. There is in such case a conclusive presumption of jurisdiction, although the record fails to recite facts showing jurisdiction.

It is said:

"*§28. Presumption in Favor of Proper Service.*— It is a board fundamental principle that a presumption will be indulged in favor of the legality and regularity of the proceedings of the trial court when this may be done consistently with the record; it will be presumed, if the court is a court of general jurisdiction, that it regularly acquired and lawfully exercised its jurisdiction over the party or the res, as the case may be. This is true not only in the reviewing court on appeal or error proceeding, but whenever a judicial proceeding or a judgment or decree rendered therein becomes a factor in the trial of another case." 42 Am. Jur., Process, §28.

Although a review of the authorities in Indiana may seem to be somewhat confused upon this point, we think they may be harmonized upon close analysis with what appears to be the great weight of authority. For the purpose of consideration here, we may assume that the consent of the parent, as provided in the statute, is

somewhat analogous to service of summons on a party by which jurisdiction is obtained over the person in a law suit. We point out, nevertheless, that this analogy is not strictly correct, since in all cases of jurisdiction over the person a service of process must be made. However, in the instant case a written consent of a parent for adoption is not in all cases necessary for the court to acquire jurisdiction to render a judgment of adoption. The statute provides for certain exceptions in which the consent of a parent is unnecessary.

Adoption proceedings, as stated in *Emmons* v. *Dinelli et al.* (1956), 235 Ind. 249, 133 N. E. 2d 56, have their origin in the Roman Law and are the concern of the State in the proper care and protection of infants who have been abandoned, neglected, or mistreated. It is stated there that the parents' right is not an absolute right of *property*, but is in the nature of a trust. In *Glansman* v. *Ledbetter* (1921), 190 Ind. 505, 517, 130 N. E. 230, 234, it is stated:

". . . A judgment of adoption is the conclusion of a special statutory proceeding, frequently referred to in the books as being in the nature of a proceeding *in rem*. . . . "

The primary object of adoption proceedings is the protection and interest of the child. However, reasoning by analogy in the cases where there is a failure of the judgment record to show service of process, we find we have consistently held that there is a conclusive presumption of jurisdiction over the persons named in the judgment in any *collateral* attack, as distinguished from a direct attack.

*Works' Indiana Practice*, Lowe's Rev., Vol. 1, §5.13 states:

"The jurisdiction of courts of general jurisdiction will be presumed. They will be presumed to

have had jurisdiction, not only of the subject matter, but of the parties, where the record shows nothing to the contrary."

Only in a direct attack to vacate and set aside such judgment for fraud or other defects may evidence *dehors* the judgment record be brought in to impeach such a judgment. Here appellant admits no fraud is involved.

In *Pressley* v. *Harrison et al.* (1885), 102 Ind. 14, 22, 1 N. E. 188, it is said:

"When the record of a court of general jurisdiction is silent upon the subject of service of process the presumption will be indulged that the jurisdiction of the person was acquired as against a collateral attack."

In *Littleton* v. *Smith et al.* (1889), 119 Ind. 230, 21 N. E. 886, in a collateral attack upon a judgment on the theory that the presiding judge was disqualified to act, it was held that unless the record affirmatively disclosed his disqualification, the judgment could not be assailed. Many cases to the same effect are reviewed in *Friebe* v. *Elder* (1914), 181 Ind. 597, 105 N. E. 121.

Many other cases in Indiana hold that where the record of a judgment is silent with respect to the showing of service or notice on the parties, it may not be collaterally attacked by evidence *dehors* the judgment record. *Hunter* v. *Bradshaw* (1935), 209 Ind. 71, 198 N. E. 73; *Green* v. *Scharman* (1922), 78 Ind. App. 465, 135 N. E. 3; *Frankel* v. *Voss* (1915), 59 Ind. App. 175, 109 N. E. 55; *Friebe* v. *Elder* (1914), 181 Ind. 597, 105 N. E. 151; *Goar et al.* v. *Maranda et al.* (1877), 57 Ind. 339; See also: *Cully* v. *Shirk, Executor* (1891), 131 Ind. 76, 30 N. E. 882, where the case of *Cavanaugh et al.* v. *Smith* (1882), 84 Ind. 380 is distinguished.

In *Earle* v. *Earle* (1884), 91 Ind. 27 it is said that some confusion exists in the use of the words "void" and "voidable" as applied to judgments. Judgments are frequently spoken of as void because they may be declared invalid in a proper proceeding. However, such a proceeding must be a direct attack unless the judgment is a nullity which is revealed on the face of the record.

More recently, in *Clark* v. *Clark* (1930), 202 Ind. 104, 172 N. E. 124, a wife brought an action to subject the property of a husband located in the county where the action was brought, to the payment of support. It is stated in that case that the judgment rendered was not *in personam* but rather *in rem*, and since the court which rendered the judgment was one of general jurisdiction, as distinguished from one of limited jurisdiction, there was a conclusive presumption that the trial court had acquired jurisdiction. The opinion further states:

> "Where a party to a judgment seeks to impeach its validity and have it declared void, in a subsequent action, by the allegation of facts *dehors* the record, and not apparent on the face of the judgment, such an attack is a collateral one, and cannot be made by a party to the record." *Clark* v. *Clark*, *supra*, at 114.

The cases of *Lee and Wife* v. *Back* (1868), 30 Ind. 148 and *Glansman* v. *Ledbetter* (1921), 190 Ind. 505, 130 N. E. 230, are cited by the appellant as authority for her position that the judgment of adoption is totally void and a nullity, that evidence may be considered showing no notice was given to the natural parents of the adoption proceedings, and thus no consent is obtained where the statute so provides. An examination of these two cases shows that both were actions for a

writ of habeas corpus to obtain the custody of the children in question, and involved therein were judgments of adoption. The court in habeas corpus proceedings, after the issues were made upon the question of the defectiveness of the judgment by reason of the lack of consent or notice to the natural parents, heard evidence upon such issue. Although in a habeas corpus proceeding the general rules seems to be well settled that a judgment pleaded in the return may not be attacked directly by evidence *dehors* the record, nevertheless in the habeas corpus proceedings mentioned, the court did permit this to be done. In *Glansman* v. *Ledbetter, supra,* the recognition of this deviation is treated with the following language:

> ". . . . Ordinarily such a judgment is impervious to a collateral attack, and therefore not a subject for investigation in a *habeas corpus* proceeding. Black, Judgments (2d Ed.) §256. But as we construe the reply, it brought before the court rendering the judgment of adoption, and to which the situation of the parties had not changed, facts in opposition to its enforcement, amply sufficient upon the theory of fraud in its procurement to constitute a *direct attack* thereto." (Our italics) Id. at 518.

The court further stated that this brought into play the exercise of the court's "equity jurisdiction" by reason of the pleadings. We point out further that the custody of children was involved and the court was concerned with "the child's best interest." It seems, therefore, this case, as well as the case of *Lee and Wife* v. *Back* (1868), 30 Ind. 148, can be harmonized upon the theory that in reality the habeas corpus actions, by their pleadings, were converted into a direct attack. The actions thus become equitable in nature to set aside the adoption judgments.

A statement in 25 Am. Jur., Habeas Corpus, §78,

p. 203 lends itself to such an interpretation. There it is said:

" . . . Where the writ is availed of for the latter purpose, (custody of children) the proceeding partakes of the incidents of a suit in equity and is considered to be one in rem, the child being the res."

For the reasons stated, the *Glansman* and *Lee* cases, *supra*, cited by the appellant, are not in point.

We finally call attention to the case of *Hunter* v. *Bradshaw* (1935), 209 Ind. 71, 198 N. E. 73, wherein an action was brought to quiet title to real estate by the brothers and sisters (heirs) of a deceased Minnie A. Smedley, who was the adoptive parent of the defendant, Rosa May Bradshaw. She was adopted at the age of four by the Smedleys, and it was alleged that Minnie A. Smedley, being of unsound mind at the time of the adoption, was unable to consent to such adoption proceedings. It was further contended that it did not appear of record whether or not the defendant (the adoptive child) had a father living and whether or not he consented to such adoption. Judge Fansler, speaking for the court, stated: (pp. 73, 74)

"The petition for the adoption and the judgment are set out in the complaint. It does not appear from the pleadings or judgment whether the child had a father living, nor whether service was had upon the father, and it is contended that this is sufficient to render the judgment of adoption void. But this is an action in equity. The adoption proceedings were brought by the sister of appellants and her husband, and they were responsible for the allegations in the petition. The petition was sufficient to give the circuit court jurisdiction of the child and of the petitioners, and to pass on the sufficiency of the petition, as well as the constitutionality of the statute. The petitioners could not have been injured by a failure of notice to a

parent. That notice is for the sole purpose of advising the natural parent so that his rights may be protected. In equity, one upon whose petition an order of adoption is entered, fixing the status of a child and establishing it as his heir, at his request, cannot be heard after years have passed to question the validity of the judgment because his petition was defective in some technical respect."

On the question of laches and delay in attacking a judgment adoption, see also: *Brown et al.* v. *Brown* (1885), 101 Ind. 340.

The appellee here cites and also relies upon a remedial statute, Burns' §3-126 (1946 Repl.) which purports to correct all defects and errors in adoption proceedings previously had thereto. In view of what has been said, we need not give that question any further consideration. We moreover point out that neither of the parties in this action have seen fit to refer to Burns' §2-605 (1946 Repl.) which provides:

"Any person being under legal disabilities when the cause of action accrues may bring his action within two [2] years after the disability is removed."

It appears to us under the authorities cited that the judgment of adoption in this case was not void on its face and it may not be impeached by evidence *dehors* the record or by a failure of the record to state all facts necessary to show jurisdiction. There is a presumption of jurisdiction in such cases unless the lack of jurisdiction appears affirmatively on the face of the record.

The judgment of the trial court is affirmed.

Landis, C. J., concurs; Jackson, J., concurs in result; Achor, J., concurs with opinion, in which Myers, J., concurs.

## CONCURRING OPINION

ACHOR, J.—I concur in the result reached in the opinion as written by Judge Arterburn.

As noted in that opinion, the statute in effect at the time of the adoption provided as follows, in part:

"§917 (812) *Consent of parents—Proceedings as to inmates of house of refuge, etc.*—5. If the child is under twenty-one years of age, such court shall not adopt such child, if it have a father or mother living, unless such father or mother appears in open court and gives consent thereto, or unless such father or mother shall file with the clerk of the court his or her verified consent to such adoption; . . . " Acts 1855, p. 122; as amended, Acts 1913, p. 408. Burns' §917, 1926 Revision.

It is to be noted that the above cited statute uses the term *father or mother* in the *disjunctive;* therefore, under the statute it was only necessary that either the father *or* mother appear in open court and consent to the adoption, or that the father *or* mother file with the clerk his *or* her verified consent to such adoption.

The statute was obviously made to rest upon the presumption that the parent granting the consent would either act as agent for the other parent or independently of such other parent by virtue of some legal authority, such as the custody having been invested in such parent by a court decree.

The opportunity for controversy under the above statute is obvious. However, this was the law at the time of the adoption with which we are here concerned. The fact that the legislature so construed the act and considered its objectionable characteristic is made apparent by the fact that in 1941 and 1943 it amended the statute to provide, in part:

"If such child have parent or parents living, he, she or they shall consent in writing to such adoption. . . . . ." Acts 1943, ch. 40, §5, p. 89 [§3-120, Burns' 1946 Repl.].

Thus, the act as amended, was made to provide that *both parents*, if living, must consent, in writing, to such adoption, unless the circumstances of the case are such as to bring it within one of the exceptions to the act, as thereafter provided. In this case, there is no contention that appellant's mother, in consenting to her adoption, did not act within the authority of the then existing statute. The mother had been granted appellant's care and custody in a divorce proceedings at the time of appellant's infancy, and had continuously thereafter, to the time of the adoption seven years later, exercised the exclusive custody, care and control of her child, the appellant, to the time of her adoption.

Therefore, under the existing circumstances and the then controlling statute, the mother's consent for the adoption of her child by her second husband—appellant's stepfather—was all that was required, in order that the decree of adoption constitute a valid and subsisting judgment.

Myers, J., concurs.

NOTE.—Reported in 195 N. E. 2d 481.