Garland MILLER, in his official capacity as County Clerk of Delaware County, Indiana, Appellant (Defendant below),

v.

Linda MORRIS, Appellee (Plaintiff below).

No. 878S179.

Supreme Court of Indiana.

March 26, 1979.

Theo. L. Sendak, Atty. Gen., Robert C. Swain, Deputy Atty. Gen., Indianapolis, for appellant.

Kenneth J. Falk and Dean L. Sutton, Muncie, for appellee.

HUNTER, Justice.

This is an appeal from a judgment of the Delaware Superior Court in which the court held that a portion of Ind. Code § 31–1–3–3 (Burns Supp. 1978) is unconstitutional. The statute deals with restrictions on the issuance of marriage licenses and provides in part that a marriage license shall not be issued to any person who has dependent children unless that person proves that he is supporting or contributing to the support of each dependent child in compliance with any court orders for such support. The judge relied upon the recent United States Supreme Court decision of *Zablocki v. Redhail*, (1978) 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618, which held that a similar statutory provision in Wisconsin was unconstitutional.

The facts which gave rise to this appeal are as follows. Linda Morris is engaged to marry Larry Sherrell who was divorced in 1973. At the time of his divorce, Sherrell was ordered to pay child support of $30 per week. In September, 1977, Morris and Sherrell applied for a marriage license at the Delaware County Clerk's office. Their application was denied because at that time Sherrell was over $3,000 in arrears on his support payments. Subsequently in October, Morris filed a complaint against the Delaware County Clerk challenging the constitutionality of the statute. The trial court granted summary judgment in her favor and the state has now appealed pursuant to Ind.R.App.P. 4(A)(8) which is applicable because a portion of a statute of this state has been declared unconstitutional.

The statute in question states:

"Refusal of license to disqualified persons —Reasons.—No license to marry shall be issued where either of the contracting parties has been adjudged to be of unsound mind unless it satisfactorily appears that such adjudication has been removed [;] nor shall any license [be issued] issue when either of the contracting parties is afflicted with a transmissible disease, or at the time of making application is under the influence of an intoxicating

liquor or narcotic drug; *nor shall a license be issued to any person who has dependent children unless that person accompanies his application with satisfactory proof that he is supporting or contributing to the support of each dependent child in compliance with any court order or orders issued for their support.*" Ind. Code § 31–1–3–3 (Burns Supp. 1978), (emphasis added).

The trial judge found that the italicized portion of this statute was unconstitutional for the reasons given by the United States Supreme Court in *Zablocki v. Redhail, supra,* and the court ordered the last phrase of the statute severed from the statute and the remaining provisions left intact.

In evaluating the constitutionality of the challenged portion of this statute, we must be guided by the standards set forth in *Zablocki.* We first look at the nature of the classification created by the statute and the individual interests affected. The statute creates two readily identifiable classes of Indiana residents. The first class contains all those individuals who have no children, or who are not under any court ordered support obligations, or who are complying with their court ordered support obligations. The second class contains those who are not supporting their dependent children in compliance with their court ordered support obligations.

The United States Supreme Court has clearly established that the right to marry is a fundamental liberty protected by the Due Process Clause and that it is among the personal decisions protected by the right of privacy. *Zablocki v. Redhail, supra; Carey v. Population Services International,* (1977) 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675; *Loving v. Virginia,* (1967) 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010. Under the challenged provision, no Indiana resident in the affected class may marry without proof that he is complying with support orders. The result of this provision is to prohibit absolutely members of this class from being issued a marriage license, and hence, it interferes with their fundamental right to marry.

The Wisconsin statute which was considered by the United States Supreme Court in *Zablocki* set out substantially the same class as does our statute. It then required members of this class to have a court order showing compliance with support obligations and showing that children covered by support orders were "not likely thereafter to become public charges." Wis. Stat. § 245.10(1) (1973). While this statute added an additional requirement about a showing of future ability to support dependent children, the affected class and the effect on this class are the same as under our challenged provision.

The state argues that our statute is not an absolute prohibition against the freedom to marry since members of the affected class can seek modifications of their support orders or support agreements and then proceed to marry. However, this same argument was dealt with in *Zablocki.* The Court found that having to seek a court order showing compliance with support obligations caused such a burden that it would prevent some members of the affected class from exercising their right to marry. And even those who followed through with the court order and met the statute's requirements would suffer a "serious intrusion" into their freedom of choice over a fundamental right. The same burden and serious intrusion exist with our challenged provision since it requires the members of the affected class either to pay all back support obligations or to seek a modification of such obligation through a court order. It therefore significantly interferes with the exercise of a fundamental right.

We now turn to the examination of the state's interests which this statute seeks to protect. The Court said in *Zablocki v. Redhail, supra:*

"When a statutory classification significantly interferes with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests." 434 U.S. at 388, 98 S.Ct. at 682, 54 L.Ed.2d at 631.

It is true as the state points out that marriage is a social relationship subject to state regulation. Reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship have been upheld. *Califano v. Jobst,* (1978) 434 U.S. 47, 98 S.Ct. 95, 54 L.Ed.2d 228.

The state first points out that the challenged provision discourages the conception of children by persons who are unable to accept responsibility for them and therefore protects the welfare of future children. However, it is obvious that the provision is not narrowly drawn to effectuate this interest. Marriage is not a necessary predicate to the birth of children, and preventing a contemplated marriage may only result in children being born out of wedlock. Instead of protecting the welfare of future children, the statute may have the opposite effect, in that it will promote cohabitation without marriage. The statute also makes no attempt to diagnose persons who would be unwilling to accept responsibility for their children by any other test except a financial one. The provision is underinclusive in these respects.

Furthermore, the statute does not allow for the possibility that the new spouse will actually better the applicant's financial situation and improve his ability to satisfy both prior and future support obligations. In this respect the statute is substantially overinclusive as well.

The state argues that the statute protects existing children, as well as possible future offspring. As the Court noted in *Zablocki v. Redhail, supra,* this justification is both irrational and not narrowly drawn.

"This 'collection device' rationale cannot justify the statute's broad infringement on the right to marry.

"First, with respect to individuals who are unable to meet the statutory requirements, the statute merely prevents the applicant from getting married, without delivering any money at all into the hands of the applicant's prior children. More importantly, regardless of the applicant's ability or willingness to meet the statutory requirements, the State already has numerous other means for exacting compliance with support obligations, means that are at least as effective as the instant statute's and yet do not impinge upon the right to marry." 434 U.S. at 389, 98 S.Ct. at 682–683, 54 L.Ed.2d at 632–633.

In Indiana, as in Wisconsin, existing support obligations may be enforced through civil contempt, assignment, or even criminal sanctions. Ind. Code § 31–1–11.5–13 (Burns Supp. 1978); Ind. Code § 35–46–1–5 (Burns Supp. 1978). Certainly, the use of these civil or criminal procedures will be more likely to produce compliance with a support obligation and protect the rights of existing children than will the challenged provision of Ind. Code § 31–1–3–3.

Finally, the provision is also underinclusive in respect to the protection of existing children since it does not limit any new financial obligations other than those arising out of the contemplated marriage. Thus, the challenged provision of the statute, being both underinclusive and overinclusive, is not narrowly drawn to effectuate the interests it purports to uphold and must therefore be held unconstitutional under the standards of *Zablocki.*

In following the guidelines of the United States Supreme Court in this case, we do not wish to imply that we have abandoned our position of concern for the rights of innocent children or diminished our previous willingness to compel by every possible legal means an individual's duty to support his or her offspring.

The judgment of the trial court must be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER and PRENTICE, JJ., concur.

PIVARNIK, J., dissents with opinion.

PIVARNIK, Justice, dissenting.

I must respectfully dissent from the majority opinion wherein it affirms the judgment of the Delaware Superior Court in holding that the portion of Ind. Code

§ 31–1–3–3 (Burns Supp. 1978) is unconstitutional. The decision of the United States Supreme Court in *Zablocki v. Redhail,* (1978) 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618, dealt with a Wisconsin statute that was far different from Indiana's. Our Indiana statute provides that a person applying for a marriage license must show that he is supporting any dependent children he has or is contributing to their support in compliance with any court orders issued for their support. As the appellee was advised in this cause by the County Clerk, compliance with the support order was the only requirement under the statute.

The Wisconsin statute went much further. It provided that one who had dependent children not in his custody could not marry except with permission by order of the court which granted the judgment or support order, or the court having divorce jurisdiction in the county where such minor issue resided, or where the marriage license application is made. It further provided that not only did a person in such circumstances have to show that he was complying with court orders of support, but such person must also show that those children he was liable to support were not then, nor were they likely to become, public charges. Several of the Justices observed in *Zablocki* that under the Wisconsin statute, a plaintiff could be in full compliance with any court orders and be supporting his children and still be subject to denial of a marriage license if his children were receiving some form of welfare. *Id.* at 434 U.S. 394, 98 S.Ct. 685, 54 L.Ed.2d 636 (Stewart, J., concurring); *Id.* at 434 U.S. 402, 98 S.Ct. 689, 54 L.Ed.2d 641 (Powell J., concurring); *Id.* at 434 U.S. 404, 98 S.Ct. 690, 54 L.Ed.2d 642 (Stevens, J., concurring).

No one can doubt that the right to marry is a fundamental liberty protected by the due process clause and is a personal decision protected by the right of privacy. But it is also true, as the majority points out, that marriage is a social relationship subject to state regulation. Entering into or dissolving marriage relationships, and care, support, and custody of minor children incident to those relationships, are all matters of grave concern to society and are considered to be of particular importance to the state in its concern for the welfare of its citizens. This statute is but one of a number involving people in the family relationship.

This statute does not set up economic standards for when a person may or may not be married based upon his or her ability to pay child support. The reference in this statute to support orders is to Ind. Code §§ 31–1–11.5–12, et seq. (Burns Supp. 1978), which establish the standards under which support orders should be set. Among these are the respective financial resources of the custodial and the non-custodial parents along with all other considerations involving status and circumstances of all persons involved. This statute seeks to reach the problem created for society, not by one who is unable to pay support because of poverty, but by ones who refuse to pay support when able to do so thus visiting their responsibility upon someone else; most often, and in greatly increasing numbers, on society itself.

There is no separate class of people being established by this statute who are being treated differently from some other class or who are deprived of some right which other members of society have. The statute seeks to reach those who have abused the rights of marriage and child custody thus creating obligations and responsibilities which they have imposed upon the other members of society. This statute merely asks them to meet their responsibility by taking care of those children they have already produced before beginning all over again. The statute is a permissible exercise of the state's power to regulate family life and to assure the support of minor children and therefore, under the due process clause, can be shown to bear a rational relation to a constitutionally permissible objective. *Dandridge v. Williams,* (1970) 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491; *Ferguson v. Skrupa,* (1963) 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93; *Williamson v. Lee Optical Co.,* (1955) 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563.