Carolyn BROWDER, Appellant
(Petitioner Below),

v.

Alvin and Mary HARMEYER Indiana Department of Public Welfare and Ripley County Department of Public Welfare, Appellees (Respondents Below).

No. 4–882A257.

Court of Appeals of Indiana,
Fourth District.

Aug. 31, 1983.
Rehearing Denied Oct. 18, 1983.

Larry L. Eaton, Eaton & Taylor, Versailles, for appellant.

Douglas C. Wilson, Greeman, Kellerman & Wilson, Batesville, for appellees.

MILLER, Judge.

The adoption of Nathanial Browder, currently four years old, is the focus of this controversy between his maternal grandparents, Alvin and Mary Harmeyer, and his paternal grandmother, Carolyn Browder. Browder, while recognizing the language of the adoption statute (Ind.Code 31–3–1–1) requires spouses to petition jointly, alleges she was denied equal protection when the trial court dismissed her adoption petition because her husband, Nathanial's paternal grandfather, had withdrawn from the proceedings. She claims the statute discriminates against her because, under its terms, she would have been permitted to seek Nathanial's adoption had she not been married. She further complains the court improperly granted the adoption petition of the Harmeyers, claiming both it was not in Nathanial's best interest and that removing Nathanial from her home without a specific finding of her unfitness infringed, without due process, on her fundamental right to family integrity—an *in loco parentis* relationship arising from her custody of Nathanial just prior to the adoption proceedings. We perceive no error in the trial court's actions and affirm.

## FACTS

Nathanial was born November 29, 1978, the son of Russell Browder (father) and Judy Harmeyer Browder (mother). Father and mother divorced in 1980, and since then, Nathanial has been bundled from one relative to another while mother and father's parental rights were terminated. Nathanial was eventually placed with grandmother Browder, five months before adoption proceedings were initiated, in September, 1981.

On February 16, 1982, both grandparents Browder petitioned to adopt Nathanial as husband and wife even though they had been living apart since 1980. Shortly there-

after, the grandparents Harmeyer submitted their own petition, and the two actions were consolidated. The Ripley County, Decatur County, and Franklin County Departments of Public Welfare gathered information regarding the petitioners for their reports to court. These sources, in addition to in-court testimony at the hearing, revealed the following about the petitioners:

Browder is forty-nine years old and the mother of seven children, only one of whom is still at home. She and her husband have lived apart since 1980, for undisclosed reasons, but divorce is not contemplated and their relationship is friendly. Her health is currently fairly good, but she underwent surgery in 1980, to remove her gall bladder and appendix, and was hospitalized in 1981, for pneumonia and bronchitis, with signs of emphysema. She is a Nurse's Aide at a local nursing center but had been laid off from a prior job with a nursing home as a result of accusations she was abusive to patients and did not care for their needs. While Nathanial lived with her, she worked the 11:00 P.M. to 7:00 A.M. shift while Jerry, her then thirteen-year-old son, cared for Nathanial. Social workers, even during scheduled visits, observed a great deal of clutter in Browder's home, including stacks of dirty dishes in the kitchen and heaps of dirty clothes strewn in the bedroom and bathroom. During one particular department visit, Browder's landlord demanded she quit the premises because of nonpayment of the $250 rent (despite net monthly income of $724 and $320 in expenses), the living conditions in the apartment, and water damage causing the ceiling below to fall in. (At the time of the hearing, Browder, Jerry and Nathanial had moved to a two-bedroom rental house.) While residing with Browder, Nathanial was psychologically and physically tested. As a result, he was enrolled in a pre-school program, but Browder did not follow through on medical recommendations concerning a hearing

problem. Nathanial is well-adjusted, and there is no doubt of the affection between grandmother and grandson. However, two of Browder's four references did not believe it would be in Nathanial's best interest for Browder to adopt him. The Ripley County Department of Public Welfare recommended a new adoptive home, mainly because of concern over Browder's financial stability, supervision and discipline of Nathanial, housing stability, health, and maturity of decision-making and "prioritizing." In addition, the department expressed concern that Nathanial would be in contact with father whom Browder had continually provided for throughout his adult years until Nathanial was put in her home.

The Harmeyers, Alvin (71) and Mary (62), have raised twelve children and live on a 213-acre farm. Mr. Harmeyer is a retired farmer, and Mrs. Harmeyer is a housewife. Their yearly income is in excess of $25,000, and they own their home and two farms. Nathanial had lived with the Harmeyers for awhile after his mother and father divorced, but at that time the Harmeyers felt it would be better for him to reside with a younger couple so the Department placed him elsewhere (with a maternal uncle). Since then, and because no younger couple had come forward, the Harmeyers decided they would like to adopt him. All five of their references and the family doctor believed the Harmeyers would be good adoptive parents. There is some concern in the Ripley County Department of Public Welfare that Nathanial's mother, currently living in Texas, would have sporadic contact with Nathanial, but Franklin County stated the Harmeyers, despite their age, would be an excellent placement choice.

The record is not entirely clear, but evidently after Browder presented her testimony, the trial court dismissed her adoption petition[1] because her estranged husband had withdrawn his name from the petition. The Harmeyers presented their evidence,

1. The transcript of the hearing evinces no record of any motion for dismissal being made nor does it show the court so moving *sua sponte.* However, the court's final order declares Browder's petition was dismissed, and the parties have argued the pertinent issues as if it were. Therefore, we presume the dismissal of Browder's petition was procedurally regular.

and the trial court subsequently granted their petition. Browder now appeals the dismissal of her petition and the granting of the Harmeyers'.

## DECISION

*Equal Protection .*

Browder claims IC 31–3–1–1 is unconstitutional because it denies her equal protection of the laws by requiring spouses to join in a petition to adopt a person under eighteen years old while the consent or approval of another adult is not required when the petitioner is unmarried. The statute in question reads:

"Any resident of this state desirous of adopting any person under eighteen (18) years of age ... may by attorney of record file a petition with the clerk of the court.... *No petition by a married person shall be granted unless the husband and wife shall join therein,* except that when such petitioner shall be shown to be married to the natural, or adoptive, father or mother of such child then such joinder by such father or mother shall be deemed not necessary provided that duly acknowledged consent of the natural, or adoptive, parent is filed with the petition."

IC 31–3–1–1 (Emphasis added.) Thus, under the provisions of this statute, an unmarried person may, but a married person cannot, adopt *as a single parent* in Indiana. This distinction, Browder complains, punished her wrongfully, caused the trial court to dismiss her petition, and constituted a denial of her equal protection rights.

■ In addressing this equal protection claim, we first observe there is no dispute that "the right to marry is a fundamental liberty protected by the Due Process Clause and that it is among the personal decisions protected by the right of privacy." *Miller v. Morris,* (1979) 270 Ind. 505, 386 N.E.2d 1203, 1204; *Zablocki v. Redhail,* (1978) 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618. It is further without dispute that potential adoptive parents are classified by our statute as either unmarried or married and are thereby treated differently in the requisites of

their respective petitions. It is therefore incumbent upon us to determine whether our statute unlawfully impaired Browder's fundamental right to marry.

■ Generally, "[e]qual protection analysis requires strict judicial scrutiny of legislative classifications only when the classification impinges impermissibly upon the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class. *San Antonio Independent School District v. Rodriguez,* (1973) 411 U.S. 1 [93 S.Ct. 1278, 36 L.Ed.2d 16] ...." *Rohrabaugh v. Wagoner,* (1980) Ind., 413 N.E.2d 891, 893. However, *Zablocki v. Redhail, supra,* the 1978 Supreme Court case proclaiming marriage as a fundamental right, did not employ the strict scrutiny level of review in overturning a statute preventing marriage where one of the affianced had failed to fulfill support obligations of noncustodial children. The Court's actual standard of review as set out in that case is less than clear. *See* J. NOWAK, R. ROTUNDA, & J. YOUNG, HANDBOOK ON CONSTITUTIONAL LAW 162–64 (1982 Supp.) Justice Marshall stated, in the majority opinion:

"By reaffirming the fundamental character of the right to marry, we do not mean to suggest that every state regulation which relates in any way to the incidents of or prerequisites for marriage must be subjected to rigorous scrutiny. *To the contrary, reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed."*

*Zablocki v. Redhail, supra,* 434 U.S. at 386, 98 S.Ct. at 681 (emphasis added). In relation to this analysis, we find Judge Buchanan's opinion in *Indiana High School Athletic Association [IHSAA] v. Raike,* (1975) 164 Ind.App. 169, 329 N.E.2d 66, an enlightened harbinger of the Supreme Court's later decision in *Zablocki.* In *IHSAA v. Raike,* a married high school student successfully challenged IHSAA and school regulations, which prevented him from participation in high school sports because of his marital

status. In overturning the validity of these rules, Judge Buchanan thoughtfully applied a " 'new' or intermediate approach . . . based upon a 'multifactor, sliding scale' analysis with the two end points of the scale being the traditional two tiers of high and low scrutiny." 164 Ind.App. at 179, 329 N.E.2d at 73. He adopted the following from another Supreme Court decision as the standard for this "intermediate scrutiny":

> " 'the classification . . . "must be reasonable . . . and must rest upon some ground of difference *having a fair and substantial relation to the object of the legislation,* so that all persons similarly circumstanced shall be treated alike." ' "

*Id.* at 183, 329 N.E.2d at 76 (quoting *Reed v. Reed,* (1971) 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 *as cited in Haas v. South Bend Community School Corp.,* (1972) 259 Ind. 515, 289 N.E.2d 495) (emphasis in original). We believe this "fair and substantial" test to be definitive of the goal sought by the Court in *Zablocki* where "reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed." *Zablocki v. Redhail, supra,* 434 U.S. at 386, 98 S.Ct. at 681. We therefore so examine the issue presented here.

■ In approaching a problem upon which intermediate scrutiny comes to bear, "[t]he general principle seems to be that the more important and closer the individual's interest comes to a specific constitutional guarantee, the greater the degree of judicial scrutiny." *IHSAA v. Raike, supra,* 329 N.E.2d at 73. Thus, the statute in *Zablocki* was struck down because it directly interfered with the right to marry. So too were the athletic regulations in *IHSAA v. Raike* because the classification, justified by preventing an "unwholesome influence" in school sports, was both over- and under-inclusive inasmuch as there are married students of good moral character and unmarried students of depraved character. In the case here, we find neither a direct impact on the right to marry nor do we find a misclassification.

■ In the first instance, we fail to see how the right to marry is affected in even the remotest way. In Indiana, an unmarried individual can adopt as well as a married individual. The mere fact that both spouses must join in such a petition affects the married state *after* the ceremony. It does not prevent the marital event except by personal choice. Such indirect impact is not sufficient for us to find Browder was not accorded her equal protection rights. *See also Califano v. Jobst,* (1977) 434 U.S. 47, 98 S.Ct. 95, 54 L.Ed.2d 228 (discontinuation of social security benefits upon marriage to ineligible individual); *Mathews v. deCastro,* (1976) 429 U.S. 181, 97 S.Ct. 431, 50 L.Ed.2d 389 (divorced woman ineligible for social security benefits when former husband is disabled or retired); *Druker v. Commissioner of Internal Revenue,* (2d Cir. 1982) 697 F.2d 46, *cert. denied* (1983) —— U.S. ——, 103 S.Ct. 2429, 77 L.Ed.2d 1316 ("marriage penalty" under old income tax system upheld); *Cutts v. Fowler,* (D.C.Cir. 1982) 692 F.2d 138 (antinepotism policy in civil service is constitutional); *Martin v. Bergland,* (10th Cir.1981) 639 F.2d 647 (husband and wife considered a single person for purposes of farm program payments); *Menezes v. Immigration & Naturalization Service,* (9th Cir.1979) 601 F.2d 1028 (visa requirements differing between fiances and spouses upheld). We therefore find that strict scrutiny is not required, but something further down the spectrum is.

■ As for the classification itself and whether even such indirect impact on marriage is permissible, we must keep in mind that "[t]he primary object of adoption proceedings is the protection and interest of the child." *Aramovich v. Doles,* (1964) 244 Ind. 658, 195 N.E.2d 481, 485; *Rhodes v. Shirley,* (1955) 234 Ind. 587, 129 N.E.2d 60; *Matter of Adoption of Hewitt,* (1979) Ind. App., 396 N.E.2d 938; *see also* Ind.Code 31–3–1–8(a). Thus, we must remember that adoption is a *privilege,* not a right, governed not by the wishes of the prospective parent(s) but by the state's determination that a child is best served by a particular disposition. When applied to the situation embodied in IC 31–3–1–1, we do not

find it illogical the legislature was concerned with the welfare of the minor adoptive children in requiring spouses to join. In the case of unmarried petitioners, there may exist no other individual in the household in whom resides the responsibilities of maintaining that household.[2] As for married petitioners, the reasonable presumption exists that both spouses live together with concurrent powers of decision-making and concurrent household responsibilities. The decision by one spouse to adopt, without the other's participation, could reasonably lead to such a state of dissension over not only responsibility for the child, but also over support and/or heirship, that the household is no longer one the sovereign would find desirable for purposes of adoption. "[T]he public policy embodied in such a requirement is readily appreciated. It is to guarantee harmony on the part of the adoptive parents upon the question of adoption, and to assure a welcome and affectionate reception of the child into its adoptive home." *In re Bresnehan's Will,* (1936) 221 Wis. 51, 64, 265 N.W. 93, 99.[3] The classification here is reasonable for purposes of legitimately governing the state's adoption procedures.

■ This policy of requiring the spouse to join in the adoption petition or, at the very least, to consent to such petition appears to be widely embraced. *See, e.g.,* Ill.Rev.Stat. ch. 40, § 1502 ("if such person is married, his or her spouse shall be a party to the adoption proceeding"); Ky.Rev.Stat. § 199.470 ("If the petitioner is married, the husband or wife must join in a petition for leave to adopt. . . .") Mich.Comp.Laws § 710.24 ("that person, together with his wife or her husband, if married, shall file a petition"); *see also* Uniform Adoption Act § 3 (1979). A relevant principle with regard to such statutory procedural provisions is that they are to be strictly construed inasmuch as adoption is not a common law

process and is thereby governed solely by statute. *Petition of Gray,* (1981) Ind.App., 425 N.E.2d 728. As a result, other jurisdictions have either denied adoption petitions or found the entire proceedings ineffective upon failure to comply with then-current statutes affecting married petitioners. *Killen v. Klebanoff,* (1953) 140 Conn. 111, 98 A.2d 520; *In re Petition for Adoption,* (1935) 21 Del.Ch. 433, 180 A. 643; *In re Dionisio R.,* (1975) 81 Misc.2d 436, 366 N.Y. S.2d 280; *In re Bresnehan's Will, supra; cf., Glansman v. Ledbetter,* (1921) 190 Ind. 505, 130 N.E. 230 (former statute mandated natural mother entitled to notice of adoption); *Petition of Gray, supra* (adoptive parents have burden of showing waiver-of-consent statute fulfilled). We therefore conclude the state has a legitimate interest in regulating adoption petitions of married persons and in the dismissal thereof for noncompliance.

■ Our conclusion cannot be swayed simply because Browder's husband is no longer residing in the household. Although the chances of reconciliation might be remote in this case, there has been no divorce proceeding either, which proceeding in and of itself can cause problems to which an adoptive child, already the victim of one marital misadventure, should not be exposed again. *See Bernhardt v. Lutheran Social Services of the National Capital Area, Inc.,* (1978) 39 Md.App. 334, 385 A.2d 1197; *In re Kyung Won Kim,* (1976) 72 Mich.App. 85, 249 N.W.2d 305 ("best interests of the child mandated that [the trial court] remove the child from an atmosphere which involved prospective adopting parents who were in the throes of a divorce"); *Watson v. Shepard,* (1976) 217 Va. 538, 229 S.E.2d 897 ("we are not satisfied adoption by this couple, while they are divorcing, will be in Judy's best interests"); *see also* Annot., "Marital Status of Prospective Adopt-

---

2. We do note, however, that at least one federal court has considered cohabiting individuals as married, at least for purposes of an antinepotism regulation relating to spouses. *Espinoza v. Thoma,* (8th Cir.1978) 580 F.2d 346.

3. Such public policy would appear to be inapplicable in those instances where a petitioner desires to adopt an adult. Thus, Indiana's adult adoption statute is reasonable in allowing *any* state resident to adopt a person over 18 years old. Ind.Code 31-3-1-11.

ing Parents as Factor in Adoption Proceedings," 2 A.L.R. 4th 555 (1980). After a review of the objectives sought and the rationale in support thereof, we find the classification of married persons in the adoption statutes has a fair and substantial relation to achieving the best interests of an adoptive child. The trial court did not err in dismissing Browder's defective petition.

*Due Process*

Browder next asserts her due process rights were offended because Nathanial was taken from her custody and her established family setting without a finding of her unfitness, in derogation of her fundamental right to family integrity.[4] She further claims it was error to use the statutory adoption goal of best interest of the child.

■ Initially, we do not deny that the right to family integrity is recognized in Indiana nor that a showing of unfitness is required before breaking up the *natural* family. *See Quilloin v. Walcott,* (1978) 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511; *Stanley v. Illinois,* (1972) 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551; *Franz v. United States,* (D.C.Cir.1983) 707 F.2d 582; *Matter of Joseph,* (1981) Ind.App., 416 N.E.2d 857.[5] However, we decline to extend this high standard of review for Browder's benefit, regardless of any claimed right to family integrity.

■ "Unfitness" applies to and should be limited to eliminating parental interest in their offspring. *See Stanley v. Illinois, supra* (children of unwed father could not

be declared wards of state without finding of unfitness); *Kissinger v. Shoemaker,* (1981) Ind.App., 425 N.E.2d 208 (presumption that child should be placed with natural parent can be rebutted by finding of unfitness); *Williams v. Trowbridge,* (1981) Ind.App., 422 N.E.2d 331; *see also Stevenson v. Stevenson,* (1977) 173 Ind.App. 495, 364 N.E.2d 161 (adoptive parents). The profound emotional and biological interest inherent in parental rights provides the rationale for this standard. It is therefore not a standard widely used except in those cases where the nuclear family (parent-child) is sundered by third parties. Browder has failed to cite us to cases where persons other than parents benefit from this high review nor have we been able to find any from our independent research. She argues, however, that her entitlement to such a finding lies in her role as custodial grandparent with a right to family integrity and her *in loco parentis* relationship to Nathanial.

■ Regardless of Browder's characterization of her relationship to Nathanial, it can never and will never (absent adoption) approach the importance attached to the parent-child relationship. This relationship is so special and important that it alone of all familial connections has a special procedure whereby affected parties must be accorded certain proceedings before rights thereto can be terminated. *See* Ind.Code 31–6–5–1 *et seq.* ("Termination of the Parent-Child Relationship"). These termination of rights proceedings are best described

---

4. The evidence revealed Browder had, at best, intermittent custody of Nathanial during his lifetime, the most recent, of course, being the five-month period prior to the adoption proceedings. It is questionable from the facts in the record whether there is any basis for concluding that a strong, firmly established relationship existed between Browder and Nathanial such as to rise to the level of dignity of a parent-child relationship. We cannot even be certain from the evidence that an affinity any more special than that existing between Nathanial and his other grandparents, the Harmeyers, arose simply because Browder had custody at the time the adoption proceedings were initiated. Thus, we hesitate to accord Browder the protection of the family integrity doctrine

but need not address the issue because we decide the case on different grounds.

5. "There can be no question that the Due Process Clause would be offended ' "[i]f a state were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest." ' *Quilloin v. Walcott,* (1978) 434 U.S. 246, 256, 98 S.Ct. 549, 555, 54 L.Ed.2d 511 (citing *Smith v. Organization of Foster Families,* (1977) 431 U.S. 816, 863, 97 S.Ct. 2094, 2119, 53 L.Ed.2d 14)." *Matter of Joseph,* (1981) Ind.App., 416 N.E.2d 857, 859.

as *in rem* proceedings, *see Abell v. Clark County Department of Public Welfare,* (1980) Ind.App., 407 N.E.2d 1209, with only parties with the most superior of interests—the parents—entitled to notice. Ind. Code 31–6–5–2 (as amended 1983 Ind.Acts, P.L. 16 § 19). No other relatives have such recognized interest in or rights to a child. Therefore, in accord with this special status, only parents need be afforded the increased due process rights inhering in a required finding of unfitness.[6]

■ Our opinion is not to derogate the interest of grandparents in their grandchildren. *See* Ind.Code 31–1–11.7–1 *et seq.* ("Grandparent's Visitation") (amended effective September 1, 1983); *Lamar v. Micou,* (1885) 114 U.S. 218, 5 S.Ct. 857, 29 L.Ed. 94 (custodial grandparent as "natural guardian"); *Drollinger v. Milligan,* (7th Cir. 1977) 552 F.2d 1220 (noncustodial grandparent's right to association with grandchild); *cf., Bristow v. Konopka,* (1975) 166 Ind.App. 357, 336 N.E.2d 397 (in guardianship proceedings, custodial relatives entitled to notice when child had no legal parentage). All we simply decide is that, even if a custodial grandparent is entitled to a certain right to family integrity, she is *not* entitled to a specific finding of unfitness when her grandchild is removed from her custody for adoption purposes. *See also In re Adoption of Randolph,* (1975) 68 Wis.2d 64, 227 N.W.2d 634.

■ Browder does not complain of the rest of the proceedings, which included notice of Harmeyers' petition and an evidentiary hearing. Under the circumstances, this is sufficient due process even if Browder does have a fundamental right to family integrity. *See, e.g., Smith v. Organization of Foster Families For Equality & Reform,* (1977) 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14; *Ellis v. Hamilton,* (7th Cir.) 669 F.2d 510, *cert. denied* (1982) —— U.S. ——, 103 S.Ct. 488, 74 L.Ed.2d 631. In the absence of legal parentage, we believe Natha-

nial's best interests became paramount, not Browder's unfitness. We do not perceive error in the trial court's adherence to Indiana's adoption procedures and find Browder received appropriate due process.

*Nathanial's Best Interest*

Browder lastly contends the trial court's actions in dismissing her petition and granting the Harmeyers' were not in Nathanial's best interests. Thus, she challenges the actual adoption decision. In order to dispose of Browder's claim, we first need to recognize our established standard of review:

"It is clearly established that we will not disturb the trial judge's decision in an adoption proceeding unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion. *Matter of Adoption of Marcum,* (1982) Ind.App., 436 N.E.2d 102; *Matter of Adoption of Ryan L.,* (1982) Ind.App., 435 N.E.2d 624. We will not reweigh the evidence. Rather, we will examine the evidence most favorable to the trial court's decision, together with reasonable inferences drawn therefrom, to determine whether sufficient evidence exists to sustain the decision. *Adoption of Marcum; Adoption of Ryan L; Adoption of Herman,* (1980) Ind.App., 406 N.E.2d 277 . . . . [T]he decision of the trial court is presumed to be correct, and it is the appellant's burden to overcome that presumption. *In re Adoption of Anonymous,* (1973) 158 Ind.App. 238, 302 N.E.2d 507."

*In re Adoption of Childers,* (1982) Ind.App., 441 N.E.2d 976. With these tenets held firmly in mind, we find no error.

■ First, Browder cannot argue it was not in Nathanial's best interests to dismiss her adoption petition. We have previously discussed the statute requiring husband and wife to join in an adoption petition and determined such statute was indeed constitutional. Browder failed to comply with

---

6. This decision does not intimate that all parents are entitled to a finding of unfitness before their children can be adopted. It remains one of the *three* methods of severing the parent-

child relationship the other two being consent (Ind.Code 31–6–5–2 as amended by 1983 Ind. Acts, P.L. 16 § 19) and abandonment (Ind.Code 31–3–1–6).

such adoption procedure and truly has no grounds to complain when Nathanial is adopted by parties who *have* complied with the law. Such is perforce in the best interest of the child.

■ The same logic applies to the granting of the Harmeyers' petition. In the absence of another valid petition, it would appear to be in Nathanial's best interest to have the Harmeyers adopt him and make him a part of a family again. This is especially true when one considers the evidence most favorable to the judgment:

The Harmeyers have a steady income, own their home, and, despite their maturity, are in fairly good health. Browder, on the other hand, appears to have been in precarious health prior to the proceedings, earns a great deal less than the Harmeyers, and has not, to date, provided Nathanial with the most ideal of home lives. There is sufficient evidence to support the trial court's decision that granting the Harmeyers' petition was in Nathanial's best interest.

The trial court is affirmed.

CONOVER, P.J., concurs.

YOUNG, J., dissents without opinion.