THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY
*v.* PUBLIC UTILITIES COMMISSION ET AL.

HOUSE, C. J., COTTER, SHAPIRO, LOISELLE and MACDONALD, JS.

Argued March 7—decided June 6, 1973

*Bruce Mayor,* for the appellant (defendant Sheldon L. Hart).

*Frederick D. Neusner,* assistant attorney general, with whom, on the brief, were *Robert K. Killian,* attorney general, and *Richard L. Barger,* assistant attorney general, for the appellee (named defendant).

*William J. O'Keefe,* with whom was *Lewis H. Ulman* and *Judith A. Maynes,* for the appellee (plaintiff).

MacDonald, J.  A careful review and analysis of the lengthy and complex record involved in this appeal discloses that a decision as to a single basic issue is decisive of the merits of the appeal.  The question presented is whether the trial court (*Rubinow, J.*) abused its discretion in denying the motion of the defendant Sheldon L. Hart (hereinafter referred to as Hart) to open the order rendered in the Superior Court (*Sidor, J.*) on August 20, 1971, which accepted a stipulation entered into and filed on that day by the plaintiff, the Southern New England Telephone Company, and the defendant the public utilities commission as a "final disposition of this case."  It would serve no useful purpose to recite here a detailed history of the many steps by which this litigation ultimately came before us, but a certain amount of procedural background is necessary for an understanding of the narrow issue presented.

A proposed new rate schedule filed by the Southern New England Telephone Company (hereinafter

referred to as SNETCO) with the public utilities commission (hereinafter referred to as the P.U.C.) was disapproved by the P.U.C. on April 23, 1969, and SNETCO appealed that decision to the Superior Court. The matter was assigned to Hon. Raymond J. Devlin, a state referee, who, exercising the powers of the court, after a series of hearings, on June 24, 1970, filed a memorandum of decision which is fully reported as *Southern New England Telephone Co.* v. *Public Utilities Commission,* 29 Conn. Sup. 253, 282 A.2d 915. That decision, which partially sustained SNETCO's appeal and remanded the April 23, 1969 order to the P.U.C. "for a further consideration of the matter in accordance with the rulings contained herein" (Id., 275), was appealed to this court by both SNETCO and the P.U.C. Hart, who had intervened as a party defendant, did not appeal. These appeals were withdrawn, however, in accordance with a stipulation entered into by SNETCO and the P.U.C. which was filed on August 20, 1971, in the Superior Court. The court (*Sidor, J.*) thereupon rendered an order reciting, inter alia, that the court "accepts the stipulation . . . and orders it placed on file . . . to serve as the final disposition of this case."

On September 1, 1971, the P.U.C. issued a supplemental finding and decision which embodied the terms of the court-approved stipulation and established a new rate schedule. Thereafter, on September 24, 1971, eighteen days after the end of the term of court in which the order of August 20, 1971 had been rendered, Hart filed his "Motion to Reopen Order Accepting the Stipulation dated August 20, 1971" which was denied by the court (*Rubinow, J.*) on November 29, 1971, and from this ruling Hart has appealed to this court.

The trial court (*Rubinow, J.*) concluded that the order of August 20, 1971, was a final judgment from which an appeal could have been taken and thus was within the purview of the rule limiting the power of the court to open a judgment after the expiration of the term during which it was rendered. It reasoned, therefore, that since the motion to open was filed after the expiration of that term, the court did not have the power to open the judgment. Moreover, the court concluded that even if it had the discretionary power to open the judgment it should, in the exercise of that power, deny the motion.

To determine whether it was an abuse of discretion to refuse to open the order rendered on August 20, 1971, it is necessary to consider the decision rendered by the state referee on June 24, 1970. There it was adjudged "that the Appeal be and it is sustained and said Order is hereby remanded to the Public Utilities Commission *for a further consideration* [emphasis added] in accordance with the rulings contained in the Memorandum of Decision." Nowhere in the judgment or in the memorandum of decision did the referee order new hearings with notice to interested parties, nor did he require that the P.U.C. report back to the court its findings of fact and conclusions of law. The state referee merely directed the P.U.C. to consider further its decision to disallow various items which SNETCO had included in its rate base. As a result of this direction, the P.U.C. necessarily was required to render an order based on that reconsideration. If the parties objected to the new order on the ground that it was not in compliance with the referee's decision, their remedy therefor would be an appeal taken from the order within thirty days pursuant to § 16-35 of the General Statutes.

It is apparent from the record and from the foregoing discussion that there is no merit to Hart's contention that the P.U.C. order of September 1, 1971, was void either as against public policy or on the ground that the P.U.C. could not properly rescind or reverse any decision, order or authorization made by it without a hearing with due notice to all interested parties. In making the latter claim, Hart apparently relied on § 16-9 of the General Statutes,[1] but even if the provisions of § 16-9 were to be considered mandatory where the P.U.C. is acting on its own initiative in altering, rescinding or reversing a prior order, the P.U.C. was here acting only under the direction of the state referee's order of June 24, 1970, which remanded the matter "for a further consideration." It is also apparent that Hart has completely failed to establish that the P.U.C. order of September 1, 1971, was not in compliance with the June 24, 1970 decision of the state referee. Moreover, it is clear that there were no violations of the fundamental rights of due process inasmuch as Hart failed to appeal from the September 1, 1971 order of the P.U.C. when it is undisputed that he had actual notice of the order in ample time to have appealed.

With respect to the August 20, 1971, order which accepted the stipulation of SNETCO and the P.U.C. in settlement of their respective appeals, it is obvious that Hart was not bound by the order because he did not have notice of the proceedings before the

[1] General Statutes § 16-9 provides, in relevant part: "Said commission may, at any time, for cause shown, upon hearing had after notice to all parties in interest, rescind, reverse or alter any decision, order or authorization by it made. Written notice of all orders, decisions or authorizations issued by the commission shall be given to the company or person affected thereby, by personal service upon such company or person or by registered or certified mail, as the commission determines."

court (*Sidor, J.*) nor was he a party to the stipulation. Since Hart was not bound by the order of August 20, 1971, he was free to appeal any order of the P.U.C. based on the stipulation. Hart did not appeal the P.U.C. order of September 1, 1971, which was based on the stipulation, and thus he may not claim now that this order was invalid. Furthermore, since Hart was not bound by the order of August 20, 1971, we do not find that the court abused its discretion in denying the motion to open. In this connection, it should be noted that the motion to open was based on grounds that had not been raised before the state referee, namely alleged discriminatory features of the rate schedules, and that no appeal was taken from the omission in his decision of any consideration of this claim which had been advanced as a basis for Hart's original motion to be made a party defendant. The trial court (*Rubinow, J.*) concluded that "a motion to open . . . is not an appropriate judicial proceeding for raising and resolving the legal and factual issues resulting from the relevant facts in this case, and from the conflicting claims of the parties." We find no error in this conclusion.

Since we find that the trial court, in so ruling, did not abuse its discretion, it is not necessary to consider the remaining assignments of error.

There is no error.

In this opinion HOUSE, C. J., SHAPIRO and LOISELLE, Js., concurred.

COTTER, J. (dissenting). The court (*Devlin, J.*) in its judgment dated June 24, 1970, sustained the appeal and remanded the case to the public utilities commission, hereinafter referred to as the P.U.C.,

for a further consideration of the matter in accordance with its rulings "on paragraphs 1, 3 and 4 of the finding" of the commission. *Southern New England Telephone Co.* v. *Public Utilities Commission,* 29 Conn. Sup. 253, 275, 282 A.2d 915. It ruled, inter alia, that the P.U.C. acted arbitrarily in failing to take into consideration definite ascertainable expenses involving wage increases, tax increases and pension commitments, to become effective before July 1, 1969, submitted as evidence by the plaintiff when the P.U.C. adopted, as a test year, the twelve months ending October 31, 1968; and further ruled that the P.U.C. improperly excluded from the rate base public utility property held for future use since it did not meet the requirement of public use; and that its action had the effect of a finding, as a matter of law, that unless property was in fact in use on the last day of the test year it would be excluded from the rate base and was, therefore, without legal support.

The court, thereupon, directed that the matter be remanded pursuant to General Statutes § 16-37, which provides in part: "If, upon hearing such appeal, it appears to the court that any testimony has been improperly excluded by the commission or that the facts disclosed by the record are insufficient for the equitable disposition of the appeal, it shall refer the case back to the commission to take such evidence as it may direct *and report the same to the court* [emphasis added], with the commission's findings of fact and conclusions of law." The case was remanded by the court for further consideration of the matter in accordance with rulings of the court on paragraphs 1, 3 and 4 of the finding of the commission.

On August 20, 1971, however, the court (*Sidor, J.*) accepted a stipulation by the plaintiff and one of the defendants, the P.U.C., in which the parties mutually "agreed to withdraw their respective appeals to the Supreme Court." Nowhere in the stipulation did the parties agree on a set of facts which would resolve the matters remanded to the P.U.C. and ordered for its consideration. In fact, although mutually agreeing to a final disposition of the case and a withdrawal of the respective appeals to the Supreme Court, the parties specifically declared that "the Plaintiff and the Defendant reserve their respective positions on the merits in said appeals and in withdrawing such appeals neither party acquiesces in so much of Judge Devlin's decision as they have appealed from." The stipulation merely recites: (1) the facts leading to the appeal, (2) the fact that the plaintiff had filed an application for supersedeas by which the rates originally requested by the Southern New England Telephone Company, hereinafter referred to as SNETCO, would become effective pending final determination of the order; and (3) the fact that the Superior Court granted the application for supersedeas (*Mulvey, J.*) on June 3, 1969.

Although the parties at no time agreed to abide by the 1970 judgment of the court (*Devlin, J.*), the August 20, 1971 order adopted the stipulation of the parties, ordered a final disposition of the funds collected pursuant to the supersedeas issued by Judge Mulvey and ordered the parties to file new rate schedules to become effective September 1, 1971. In fixing rates and in approving specific refunds, the court was clearly attempting finally to dispose of the issues raised by the original appeal from the

P.U.C. order. By the stipulation the parties concluded their appeals and this action would leave the decision of the court (*Devlin, J.*) to stand as rendered. *Blankenhorn* v. *Edgar,* 193 Iowa 184, 186 N.W. 893. At the time of the August 20, 1971 order, there still remained the need for compliance with the issues raised by Judge Delvin's decision and the validity of that order depended on compliance with the original judgment. *Stolman* v. *Boston Furniture Co.,* 120 Conn. 235, 241, 180 A. 507; *Swing* v. *St. Louis Refrigerator & Wooden Gutter Co.,* 78 Ark. 246, 250, 93 S.W. 978.

The essential elements necessary for the validity of the so-called order of the court (*Sidor, J.*) are lacking since the order must depend for its validity on compliance with the original judgment of the court. The irregularity in the proceedings leading to that order appears affirmatively on an inspection of the judgment file; and the lack of compliance with the conditions of the original judgment and with the statute, § 16-37, invalidates the action of the court and makes it inefficacious in the first instance, so that the court (*Rubinow, J.*) clearly had the power and jurisdiction to correct and remedy the irregularities and infirmities. *Stolman* v. *Boston Furniture Co.,* supra, 242.

This matter was originally brought by SNETCO pursuant to § 16-35 of the General Statutes. In hearing an appeal under § 16-35, the court is limited to deciding whether the P.U.C. acted illegally or in abuse of its discretion. *Rockville* v. *Public Utilities Commission,* 146 Conn. 1, 5, 146 A.2d 916; *Brook Ledge, Inc.* v. *Public Utilities Commission,* 145 Conn. 617, 619, 145 A.2d 590; *Coppola* v. *New York, N.H. & H.R. Co.,* 143 Conn. 109, 112, 119 A.2d 730. The

August, 1971 order of the court, inter alia, fixed rate schedules to be filed by the parties and, therefore, exceeded the statutory jurisdiction of the court and was void. *United States* v. *Walker,* 109 U.S. 258, 265, 266, 3 S. Ct. 277, 27 L. Ed. 927; *Windsor* v. *McVeigh,* 93 U.S. 274, 23 L. Ed. 914; *Sache* v. *Wallace,* 101 Minn. 169, 173, 112 N.W. 386. A void judgment not only may be opened after the term at which it was rendered but may be opened at any time. *Aramovich* v. *Doles,* 244 Ind. 658, 662, 195 N.E.2d 481; 1 Freeman, Judgments (5th Ed.) § 226. It is without life and will be ignored everywhere. *Mills* v. *Richardson,* 240 N.C. 187, 191, 81 S.E.2d 409. It is axiomatic that the validity of a judgment requires that the court have jurisdiction over the matter which its judgment assumes to decide and jurisdiction to render a judgment for the remedy or relief requested; *Crawford County Commissioners* v. *Radley,* 134 Kan. 704, 706, 8 P.2d 386, *Lynbrook Gardens, Inc.* v. *Ullmann,* 265 App. Div. 859, 36 N.Y.S.2d 888, rev'd on other grounds, 291 N.Y. 472, 53 N.E.2d 353; and an irregularity based on an inability to grant the remedy constitutes a ground for vacating the judgment after the term at which it was rendered. *Hunter* v. *Superior Court,* 36 Cal. App. 2d 100, 112, 97 P.2d 492; 49 C.J.S., Judgments, § 268. This principle is particularly applicable where, as here, the court exceeds the statutory authority which conferred on it the power to hear the case in the first instance. *Flake* v. *Pretzel,* 381 Ill. 498, 505, 46 N.E.2d 375; *Wagner* v. *Peoples Building & Loan Assn.,* 292 Ky. 691, 696, 167 S.W.2d 825; *Drainage District No. 1* v. *Hershey,* 139 Neb. 205, 211, 296 N.W. 879; *Aetna Casualty & Surety Co.* v. *Supervisors of Warren County,* 160 Va. 11, 45, 168 S.E. 617. A judgment so rendered is void even

where the court had jurisdiction over the subject matter and the parties. *Spencer* v. *Franks,* 173 Md. 73, 81, 195 A. 306; 46 Am. Jur. 2d, Judgments, § 23.

It is significant that the August 20, 1971, order was based on the stipulation executed and agreed to by the plaintiff and only one of the defendants. The appellant, Hart, also a defendant, did not receive notice of the 1971 court proceeding or order until after it was rendered and then only unofficially. Common justice requires that parties have notice; *Pennoyer* v. *Neff,* 95 U.S. 714, 24 L. Ed. 565; for the express purpose of providing an opportunity to be heard, and such notice must be reasonably calculated to apprise the parties of the pendency of the action. *Hanson* v. *Denckla,* 357 U.S. 235, 78 S. Ct. 1228, 2 L. Ed. 2d 1283; *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865. "[I]t is a principle of natural justice, of universal obligation, that before the rights of an individual be bound by a judicial sentence he shall have notice." *The Mary,* 13 U.S. (9 Cranch) 126, 144. The order of the court in accepting the stipulation agreed to by one defendant without notice to other defendants was rendered in violation of constitutional guarantees and is void. *Hanson* v. *Denckla,* supra; 49 C.J.S., Judgments, § 23.

The majority opinion also indicates that Hart was not bound by the August 20, 1971 order but concludes that he was foreclosed from claiming the invalidity of that order because he did not appeal from the September 1, 1971 P.U.C. action. The majority's conclusion that Hart had waived his rights or was estopped from attacking that order was, of course, the precise issue which the trial court (*Rubinow, J.*) declined to decide and on which it

based its refusal to open the judgment. In addition, the action of the P.U.C. in stipulating to a new rate constituted a reversal of its original order of August 23, 1969. It was necessary, therefore, that the P.U.C., before reversing its earlier decision, comply with § 16-9 of the General Statutes, which specifically requires both notice and a hearing before the P.U.C. may reverse or rescind its order. The record, however, is simply devoid of any evidence of compliance with § 16-9.

In denying the motion to open the judgment, the trial court (*Rubinow, J.*) concluded not only that it was without power to open the judgment but also that if it did have such power, it would, in its discretion, decline to do so. Under the circumstances, the power of the court to open the judgment cannot be doubted. *United States* v. *Walker,* supra; *Windsor* v. *McVeigh,* supra; *Aramovich* v. *Doles,* supra, 662; *Crawford County Commissioners* v. *Radley,* supra; *Spencer* v. *Franks,* supra; *Sache* v. *Wallace,* supra; 1 Freeman, Judgments (5th Ed.) § 226. The issue then turns on whether the court was correct in concluding that it should in its discretion decline to open the judgment. The majority opinion in concluding that the trial court did not abuse its discretion sets no standard by which such discretion should be measured. In fact, it has decided the very issue on which the trial court concluded it could not rule. At a bare minimum, the court's discretion must be exercised in harmony with the constitutional requirement that a litigant be afforded an opportunity to be heard. *Berri* v. *Rogero,* 168 Cal. 736, 741, 145 P. 95; *Clutz* v. *Carter,* 12 Neb. 113, 116, 10 N.W. 541. As a general rule, a void judgment should be vacated as a matter of right. *Waller* v. *Weston,* 125 Cal. 201,

203, 57 P. 892; *Burke* v. *Dunlap,* 185 Iowa 949, 953, 171 N.W. 293; *Gillette-Herzog Mfg. Co.* v. *Ashton,* 55 Minn. 75, 76, 56 N.W. 576.

In any event, the August 20, 1971 order of the court constituted a final disposition of the funds collected by SNETCO pursuant to the supersedeas of June 10, 1969. At the time of the filing of the present motion, these funds were being disbursed pursuant to the August 20, 1971 order, which was a nullity. Under the circumstances, it is not only within the jurisdiction of the court to open the judgment "but it is the imperative duty, of a court . . . to correct and remedy such a situation." *Stolman* v. *Boston Furniture Co.,* 120 Conn. 235, 242, 180 A. 507.

For these reasons, I dissent.