[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Nearly fifty years ago, the United States Supreme Court inMullane v, Central Hanover Bank Trust Co., 339 U.S. 306, 314,70 S.Ct. 652, 94 L.Ed. 865 (1949), held that the constitutional requirement that no person be deprived of due process of law was violated where a person was given only notice by newspaper CT Page 7300 publication of proceedings against him, unless that person could not be located after the exercise of reasonable diligence. The issue in this action is whether the defendants exercised reasonable diligence to locate and notify the plaintiff of proceedings to terminate his parental rights and to obtain approval for the adoption of his daughter.
On April 18, 1985, the plaintiff Frank Pignataro and the defendant Suzzanne Cappiello (the defendant) intermarried. On December 29, 1985, a child, Jessica, was born to them. On October 2, 1986, the defendant applied for and was granted an ex parte order by the Superior Court (Harrigan, J.) enjoining the plaintiff from imposing any restraint on her person or liberty, from assaulting, molesting, sexually assaulting, or attacking her, from entering her dwelling or the dwelling of her parents, or from taking custody or control of Jessica. On October 4, 1986, the defendant brought an action for dissolution of marriage and for custody and support of Jessica. On October 16, 1986, the restraining order against the plaintiff was continued by the court. In addition, the plaintiff was afforded visitation with the minor child.
On November 17, 1986, the defendant was granted temporary custody of Jessica. The plaintiff was ordered to pay child support of $60.00 per week. On December 23, 1986, fearing that the plaintiff would remove the child from this jurisdiction, the defendant moved to terminate the plaintiff's visitation. On January 8, 1987, the court (Landau, J.) ordered that the plaintiff be afforded supervised visitation, at his expense, on Saturday mornings. On March 26, 1987, the court (Bassick, J.) found that the plaintiff was $600 in arrears in his child support obligation. On November 12, 1987, a copy of the court's order extending its earlier restraining order was mailed to the plaintiff at apartment # 3, 3061 Main Street, Bridgeport. The order and the envelope in which it was enclosed were returned with the envelope stamped "Returned to sender [-] moved not forwardable. . . ."
On January 13, 1988, the parties' marriage was dissolved. The terms of a separation agreement which they had executed were incorporated into the judgment of dissolution. Pursuant to that judgment, the defendant was given custody of Jessica, the plaintiff was afforded visitation with Jessica on Saturdays between 10:00 a.m. and 3:00 p. m. and was ordered to pay $70.00 per week as child support plus $10.00 per week toward the sum of CT Page 7301 $3,780.00 representing past due child support and reimbursement for certain expenses. Since there were no further proceedings in the case for more than 180 days after the entry of judgment, all appearances of counsel were deemed withdrawn after the expiration of that time period, by operation of law. Practice Book § 77.[1]
On March 17, 1990, the plaintiff visited with his daughter for the last time. On August 20, 1990, the defendant moved for termination of the plaintiff's visitation, alleging that he had "engaged in conduct with the minor child during the period of visitation which is not in the interest of said minor child." The defendant also moved to hold the plaintiff in contempt of court for failure to pay child support. She certified that a copy of these motions had been sent by U.S. mail, postage prepaid, to the plaintiff at 2260 Virginia Avenue, Bridgeport, Connecticut. At this time, the plaintiff did not reside at 2260 Virginia Avenue but lived in an apartment at 2260 Virginia Avenue. The mistake in the address was a clerical error. However, the plaintiff in fact received the motions in the mail and telephoned an attorney to discuss them. The motions were not accompanied by a summons and there was no other service on the plaintiff. The plaintiff did not appear in response to the motions. On November 8, 1990, the court (Bassick, J.) did not hold the plaintiff in contempt but found an arrearage "of $1,324.64 plus $500.00 counsel fees. Total of $13,524.64." On November 11, 1990, with the plaintiff again not appearing, Judge Bassick terminated the plaintiff's visitation with the child until further order.
Prior to the judgment of dissolution, but during the pendency of that proceeding, the plaintiff had resided with his sister on Fasano Drive in Greenwich. At the time of the judgment of dissolution in January 1988, the plaintiff resided on Ellsworth Street in Bridgeport. Between December 1988 and December 1989, he again resided with his sister on Fasano Drive in Greenwich. From February 1989 to January or February of 1990, the plaintiff lived on Reservoir Avenue in Bridgeport. Between January or February of 1990 and August or September of 1990, he lived at 2260 Virginia Avenue in Bridgeport. From February to March of 1991 to February or March of 1992, the plaintiff resided at 115 High Ridge Drive in Bridgeport, although he was unable to advise this court as to where he lived during Christmas 1992. From February or March of 1992 to May or June of 1992, he lived at the Honeyspot Road Motor Inn in Stratford. From May or June of 1992 to December 1992, the plaintiff resided at 511 West Main Street in Stamford. From about December 1992 to January 1993, he lived at 110 Elm Street in CT Page 7302 Fairfield. From January 1993 to January 1994, the plaintiff resided at 1807 Broadbridge Avenue in Stratford. From January 1994 to March 1996 he lived at 76 Birdseye Street in Bridgeport. From March 1996 to the time of the trial of this action, the plaintiff resided at 291 Horace Street in Bridgeport. At no time since his divorce until January 1993 did the plaintiff have a telephone listed in his name.
On March 5, 1992, the plaintiff was summoned to appear before a Family Support Magistrate because he was in arrears in his child support obligation. The plaintiff appeared and gave the Howard Johnson's Motor Lodge on Honeyspot Road in Stratford as his address. He requested but was denied an attorney.
Eight months later, on November 9, 1992, the defendant filed an application with the Danbury Probate Court to terminate the plaintiff's parental rights and an application seeking approval for her husband, the defendant Frank Joseph Cappiello, Jr., to adopt the child. The applications listed the plaintiff's address as "Howard Johnson's Motor Lodge, Honey Spot Road, Stratford, Connecticut," the same address which the plaintiff had given the Family Support Magistrate eight months earlier. The Probate Court issued citations directing that a proper officer summon the plaintiff to appear before the court at a hearing on the application for termination of parental rights and the application for adoption. The citation identified the plaintiff's address as "Howard Johnson's Motor Lodge, Honey Spot Road, Stratford, Connecticut." A deputy sheriff returned the citations, stating in his return: "The above is hereby RETURNED UNSATISFIED. Please be advised, according to the manager at Howard Johnson's Motor Lodge, Mr. Pignataro has not resided there since April, 1992. Mr. Pignataro was evicted at that time and the records at the Motor Lodge do not reflect a forwarding address. The Stratford Post Office has no record of a forwarding address. Therefore, the above matter is hereby RETURNED UNSATISFIED." The Probate Court, finding that the whereabouts of the plaintiff were unknown, ordered that there be notice by publication of the application for termination of parental rights in The Stratford Star, a newspaper with a general circulation in the plaintiff's last town of residence. On March 3, 1993, a notice was published in The Stratford Star.[2]
When the plaintiff failed to appear at the hearing scheduled for the petitions, the Probate Court proceeded to hear both applications. The court granted the application to terminate the CT Page 7303 plaintiff's parental rights and granted the application approving the adoption of the child by the defendant Frank Cappiello. The plaintiff was not given notice of the rendering of these decrees, and no appeal was taken by the plaintiff.
In 1994, the plaintiff first learned from an attorney that his visitation privileges had been terminated by the court. He engaged another attorney who filed a motion for modification of the child support order and a motion for modification of the visitation order. As a result of inquiries made by the plaintiff or his attorney, the plaintiff learned that his parental rights had been terminated. He did not appeal the Probate Court's decrees. Rather, he commenced this action.
 I
"It is useful at the outset to note what is not at issue." Inre Edwin N., 215 Conn. 277, 280, 575 A.2d 1016 (1990). Not before the court is the issue of whether the plaintiff received proper notice of the motion filed in Superior Court to terminate his visitation privileges with his child. Nor is the propriety of the 1990 decision of the Superior Court terminating those visitation privileges before the court.
The plaintiff seeks a judgment from this court setting aside the decrees of the Probate Court terminating his parental rights and allowing the adoption of the child by the defendant Frank Cappiello. Generally, "[a]ll orders, judgments and decrees of courts of probate, rendered after notice and from which no appeal is taken, shall be conclusive and shall be entitled to full faith, credit and validity and shall not be subject to collateral attack, except for fraud." General Statutes § 45a-24. Where, however, a judgment has been rendered against a party without personal jurisdiction over him, the Superior Court has inherent authority at any time to open that judgment; Misinonile v.Misinonile, 190 Conn. 132, 135, 459 A.2d 518 (1983); or, in the case of a Probate Court decree, to enjoin its use. Miller v.McNamara, 135 Conn. 489, 496, 66 A.2d 359 (1949). If a court never acquired personal jurisdiction over a party, any judgment rendered is subject to both direct and collateral attack.[3]Broaca v. Broaca, 181 Conn. 463, 467-68, 435 A.2d 1016 (1980);Huff v. AFSCME, 10 Conn. App. 1, 5-6, 521 A.2d 200, cert. denied,203 Conn. 805, 525 A.2d 520 (1987); cf. Wilhelm Folsom, Connecticut Estates Practice (Rev'd Ed. 1983) § 31, p. 68. "Our probate courts are courts of limited jurisdiction, and CT Page 7304 therefore their decrees are not conclusive as to the fact of jurisdiction, but may be collaterally attacked for want of jurisdiction." Lewis v. Klingberg, 100 Conn. 201, 204, 123 A. 4
(1923). Such an attack is properly made in the Superior Court, not in the Probate Court which rendered the allegedly extra jurisdictional decree. Wilhelm Folsom, op cit; see General Statutes § 45a-128.[4]
"The power of equity to relieve against judgments is thus stated in one of our earlier decisions: `The general principle on this subject, and which controls our opinion in regard to it, is well stated, by Judge Story, in his Commentaries upon Equity Jurisprudence. "In all cases, where by accident, mistake, fraud or otherwise, a party has an unfair advantage in proceedings in a court of law, which must necessarily make that court an instrument of injustice, and it is, therefore, against conscience that he should use that advantage, a court of equity will interfere, and restrain him from using the advantage which he has thus improperly gained."' Tucker v. Baldwin, 13 Conn. 136, 144."Folwell v. Howell, 117 Conn. 565, 568-69, 169 A. 199 (1933).
 II
Of critical importance in this case is which party has the burden of proof as to the issues raised. The parties post-trial briefs did not discuss this all-important question. Upon closer examination of the record, the court ordered supplemental briefs addressing this issue. The plaintiff's supplemental brief takes the position that (1) in an equitable action based on fraud, the burden of proof is on the plaintiff to establish his claim by clear and convincing evidence, but that here, a fiduciary relationship existed between the parties which shifted that burden to the defendants; (2) in an action for declaratory relief, the burden of proof is upon the plaintiff to establish his claim by a preponderance of the evidence.
The plaintiff's claim that the defendants had a fiduciary relationship rests on two bases. First, the plaintiff claims that since the defendant Suzzanne Cappiello was the petitioner before the Probate Court, she assumed a fiduciary obligation to him. Here, the plaintiff's "argument posits `a proposition for which he offers no authority other than assertion.' State v. Levine,5 Conn. App. 207, 209, 497 A.2d 774, cert. denied, 197 Conn. 816,500 A.2d 1337 (1985)." State v. Mancinone, 15 Conn. App. 251,288-89, 545 A.2d 1131, cert. denied, 209 Conn. 818, 551 A.2d 757
CT Page 7305 (1988), cert. denied, 489 U.S. 1017, 109 S.Ct. 1132,103 L.Ed.2d 194 (1989). Second, the plaintiff claims that a fiduciary relationship exists between ex-spouses. "A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." Dunham v. Dunham,204 Conn. 303, 322, 528 A.2d 1123 (1987). While some relationships between ex-spouses may be more amicable than others, such a relationship, in and of itself, is anything but a fiduciary or confidential one. Cf. Spatola v. Spatola, 4 Conn. App. 79,492 A.2d 518 (1985).
In Etchells v. Wainwright, 76 Conn. 534, 537, 57 A. 121
(1904), the Supreme Court stated that a petitioner for a new trial "is required to prove by legal evidence the facts upon which he relies to establish [his] right to a new trial. . . ." Similarly, insofar as the plaintiff seeks injunctive relief from the court, he has the burden of proving his entitlement to that remedy. Powers v. Ulichny, 185 Conn. 145,147, 440 A.2d 885 (1981); Hartford v. American Arbitration Assn.,174 Conn. 472, 476, 391 A.2d 137 (1978). Also, it is a well-established rule that merely because "a party sees fit to institute an action for a declaratory judgment in no way operates to alter or shift the ordinary rules as to the burden of proof by choosing the procedure of such an action." (Citations omitted; internal quotation marks omitted.) Scott v. General Iron Welding Co., 171 Conn. 132, 139, 368 A.2d 111 (1976). "It is axiomatic that a trial court is bound by Supreme Court precedent. . . . This principle is inherent in a hierarchical judicial system." (Citations omitted.) Jolly, Inc. v. ZoningBoard of Appeals, 237 Conn. 184, 195, 626 A.2d 831 (1996). Bound by these Supreme Court pronouncements, and because the plaintiff does not deny that he bears the burden of proof, except as disposed of supra, the court allocates to the plaintiff the burden of proving his claims. See Treat v. Town Plan ZoningCommission, 145 Conn. 406, 409, 143 A.2d 448 (1958) (case considered as parties have presented it); Montanaro Bros.Builders, Inc. v. Snow, 4 Conn. App. 46, 52, 492 A.2d 223 (1985); Maltbie, Conn. App. Proc. (2d Ed.) §§ 40-43.
 III
Under the circumstances of this case, the termination of parental rights was a prerequisite to the adoption of the child. CT Page 7306 See General Statutes § 45a-724 (a)(2).[5] For this reason the court first will address the plaintiff's claim that the decree of the Probate Court granting the application terminating his parental rights must be set aside because he did not receive proper notice of the hearing on that application.
"Upon receipt of a petition for termination of parental rights, the court of probate . . . shall set a time and place for hearing the petition." General Statutes § 45a-716 (a). With certain exceptions not applicable here, General Statutes § 45a-716 (c) provides that "notice of the hearing and a copy of the petition, certified by the petitioner, his agent or attorney, or the court clerk, shall be served at least ten days before the date for the hearing by personal service on the persons enumerated in subsection (b) of this section who are within the state, and by certified mail, return receipt requested, on the commissioner of children and families. If the address of any person entitled to personal service is unknown, or if personal service cannot be reasonably effected within the state or if any person enumerated in subsection (b) of this section is out of the state, a judge or clerk of the court shall order notice to be given by registered or certified mail, return receipt requested, or by publication at least ten days before the date of the hearing. Any publication shall be in a newspaper of general circulation in the place of the last-known address of the person to be notified, whether within or without this state, or if no such address is known, in the place where the termination petition has been filed." Among the persons enumerated in subsection (b) of General Statutes § 45a-716, and entitled to notice of the hearing on the petition, is the father of any minor child.
The provision in § 45-716 (c) authorizing notice by publication "if personal service cannot be reasonably effected within the state" on the person entitled to notice must be read in harmony with the Fourteenth Amendment's mandate that "[n]o state shall . . . deprive any person of life, liberty or property without due process of law. "`The Constitution and the statute will be construed together as one law.'" West Hartford v.Coleman, 88 Conn. 78, 81, 89 A. 1120 (1914).
While courts have often grappled with ascertaining the particular contours of due process, certain principles are elementary and well settled. For well over a century it has been recognized that "`it is a principle of natural justice of CT Page 7307 universal obligation, that before the rights of an individual be bound by a judicial sentence he shall have notice . . . of the proceedings against him.'" Parsons v. Lyman, 32 Conn. 566, 576
[U.S.D.C., D.Conn. 1863], quoting Mr. Chief Justice Marshall inThe Mary, 13 U.S. (9 Cranch) 126, 3 L.Ed. 678 [1815]. Fundamental tenets of due process, moreover, require that all persons directly concerned in the result of an adjudication be given reasonable notice and the opportunity to present their claims or defenses. Dohany v. Rogers, 281 U.S. 362, 369, 50 S.Ct. 299,74 L.Ed. 904 (1930); Proctor v. Sachner, 143 Conn. 9, 17,118 A.2d 621 (1955); see Boddie v. Connecticut, 401 U.S. 371,91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Hanson v. Denckla, 357 U.S. 235,78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); Mullane v. Central HanoverBank Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865
(1949); Southern New England Telephone Co. v. Public UtilitiesCommission, 165 Conn. 114, 124, 328 A.2d 695 (1973) (Cotter, J.,dissenting); City Trust Co. v. Bulkley, 151 Conn. 598, 601,201 A.2d 196 (1964); Boltuch v. Rainaud, 137 Conn. 298, 300,77 A.2d 94 (1950)." Kron v. Thelen, 178 Conn. 189, 193-94, 423 A.2d 857
(1979).
"In Mullane v. Central Hanover Bank Trust Co., [supra,]339 U.S. 306, [the United States Supreme Court] gave thorough consideration to the problem of [what is] adequate notice under the Due Process Clause" of the Fourteenth Amendment to the Constitution of the United States. Walker v. Hutchinson City,352 U.S. 112, 115, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956). In Mullane,
the court held that notice by publication to trust beneficiaries who could easily be served by more direct means did not satisfy due process in connection with a judicial settlement of the trust by the New York Surrogate's Court, the functional equivalent of our Probate Court. Mullane v. Central Hanover Bank Trust Co.,
supra, 339 U.S. 319.
In court in Mullane stated: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. . . . The notice must be of such nature as reasonably to convey the required information. . . .
"But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably CT Page 7308 adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . . or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.
"It would be idle to pretend that publication alone, as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts. It is not an accident that the greater number of cases reaching this Court on the question of adequacy of notice have been concerned with actions founded on process constructively served through local newspapers. Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed." Mullane v.Central Hanover Bank Trust Co., supra, 339 U.S. 314-15.
With respect to notice by publication, the court added that it "ha[d] not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is notreasonably possible or practicable to give more adequate warning.
Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights. . . .
"Those [persons] . . . whose interests or whereabouts couldnot with due diligence be ascertained come clearly within this category. As to them the statutory notice is sufficient." (Emphasis added.) Mullane v. Central Hanover Bank Trust Co.,supra, 339 U.S. 317. "In subsequent cases, th[e United States Supreme] Court has adhered unwaveringly to the principle announced in Mullane. In Walker v. City of Hutchinson, 352 U.S. 112
(1956), for example, the Court held that notice of condemnation proceedings published in a local newspaper was an inadequate means of informing a landowner whose name was known to the city and was on the official records. Similarly, in Schroederv. New York City, 371 U.S. 208 (1962), the Court concluded that publication in a newspaper and posted notices were inadequate to apprise a property owner of condemnation proceedings when his CT Page 7309 name and address were readily ascertainable from both deed records and tax rolls. Mo[re] recently, in Greene v. Lindsey,456 U.S. 444 (1982), [the Court] held that posting a summons on the door of a tenant's apartment was an inadequate means of providing notice of forcible entry and detainer actions. See also MemphisLight, Gas Water Div. v. Craft, 436 U.S. 1, 13-15 (1978); Eisenv. Carlisle Jacquelin, 417 U.S. 156, 174-175 (1974); Bank ofMarin v. England, 385 U.S. 99, 102 (1966); Covey v. Town ofSomers, 351 U.S. 141, 146-147 (1956); New York City v. New York,N. H. H.R. Co., 344 U.S. 293, 296-297 (1953)." Mennonite Boardof Missions v. Adams, 462 U.S. 791, 797, 103 S.Ct. 706,77 L.Ed.2d 180 (1983); see also Tulsa Professional CollectionServices, Inc. v. Pope, 485 U.S. 478, 108 S.Ct. 1340,99 L.Ed.2d 565 (1988).
"The general rule that emerges from Mullane is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question." Mason v. Wilson, 116 Ariz. 255, 568 P.2d 1153,1155-1157 (Ariz.App. 1977). "Because notice by publication is a notoriously unreliable means of actually informing interested parties about pending suits, the constitutional prerequisite for allowing such service when the addresses of those parties are unknown is a showing that reasonable diligence has been exercised in attempting to ascertain their whereabouts." Abba Gana v. AbbaGana, 251 Ga. 340, 304 S.E.2d 909, 912 (1983); accord, Bank Martv. Langley, 39 Conn. Sup. 198, 201-202, 474 A.2d 491 (1984) ("if notice by publication is to be utilized, the plaintiff must clearly and in detail set forth in affidavit form all the steps taken to determine whether notice by some other form could be given so that the court may make an independent determination of the adequacy of the notice."). Moreover, and squarely on point with the statute in question here, § 45a-716, is In re BabyGirl B., 224 Conn. 263, 618 A.2d 1 (1992). In that case the Department of Children and Youth Services (DCYS) was the petitioner on a petition to terminate parental rights. The Connecticut Supreme Court stated: "Surely, it is implicit in General Statutes § 45a-716, which authorizes service by publication, that DCYS is required to make a reasonable effort to locate the parents of the child and that the record indicate these efforts prior to granting a petition for termination of parental rights. To interpret § 45a-716 to require anything less would jeopardize the constitutionality of the statute." Id., 296 n. 21; see also Restatement (Second) Judgments § 2(3). A CT Page 7310 "reasonable effort", however, does not require that all possible or conceivable means have been used to locate the person to be served within the state, but that all reasonable means have been exhausted in an effort to do so. Davis v. Kressly, 78 S.D. 637,107 N.W.2d 5, 7 (1961).
At this stage, long after the Probate Court rendered the decrees sought to be set aside, the issue is whether the defendant in fact used reasonable efforts to locate the plaintiff. Those decrees ought not be vacated because the Probate Court record, such as it is, does not indicate the efforts used. First, the plaintiff does not claim that he is entitled to such relief based solely on the Probate Court record. Second, to vacate the decrees at this juncture based on a deficiency in the Probate Court record, where the § 45a-716 does not prescribe any particular form of proof literally would be exalting form over substance. "We do not exalt form over substance." NationalElevator Industry Pension, Welfare Education Fund v. Scrivani,31 Conn. App. 728, 732, 626 A.2d 1332 (1993), reversed in part on other grounds, 229 Conn. 817, 644 A.2d 327 (1994).
It is evident that the plaintiff, for whatever reasons, was a transient dweller. Between the beginning of 1990 to the date of the hearing in the Probate court on the defendant's petitions, he had resided at seven different residences. Eight months before the defendant filed the petitions, the plaintiff represented to a Family Support Magistrate that he resided at the Howard Johnson's Motor Lodge on Honeyspot Road in Stratford. On or about December 19, 1992, when a deputy sheriff attempted to serve the plaintiff there he was told by the manager of that facility that the plaintiff had not resided there since April 1992. The sheriff learned that the plaintiff had been evicted at that time and that the Howard Johnson's Motor Lodge had no forwarding address. Most notably, the plaintiff had not provided the Stratford Post Office with a forwarding address. These are matters reflected in the deputy sheriff's return of service. "The return is prima facie evidence of the facts stated therein." Jenkins v. BishopApartments, Inc., 144 Conn. 389, 390, 132 A.2d 573 (1957). More, the plaintiff did not deny those facts.
As observed supra, not until January 1993 did the plaintiff have a telephone listed in his name. Nor did he have any regular employment, or place of employment. In light of these facts, this controversy devolves into this question: What more should the defendant reasonably have done to locate the plaintiff? The CT Page 7311 plaintiff answers that the defendant should have inquired of his family in Connecticut, her former in-laws, as to his whereabouts. Where parties have been married and have had children, they have shared for some time the most intimate of personal and legal relationships, and each must therefore be presumed to have a great deal of information concerning the other. Bearstop v. Bearstop,377 A.2d 405, 408 (D.C.App. 1977). "The typical . . . complainant usually knows significant background information about the missing [ex]spouse, and therefore usually has many feasible methods of tracking down the absentee." Abba Gana v. Abba Gana, supra, 304 S.E.2d 913. Therefore, before a court orders notice by publication to that absentee, the party seeking to invoke the court's jurisdiction should inquire of those relatives she knows to be close to the absentee party. Bearstop v. Bearstop, supra;Grigsby v. Wopschall, 25 S.D. 564, 127 N.W. 605, 607 (1910); cf. Annotation, "Sufficiency of Affidavit as to Due Diligence in Attempting to Learn Whereabouts of Party to Litigation, for Purpose of Obtaining Service by Publication, " 21 A.L.R.2d 929 (1952), as supplemented. Here, however, there is no persuasive evidence — evidence satisfying the requisite burden of proof by a fair preponderance which the plaintiff bears — that any of his family knew where he was in December of 1992. The plaintiff did testify that members of his family knew how to contact him. But on his day in court, one of the most if not the most important days of his life, he called not one member of his family to acknowledge that that family member or any other knew where the plaintiff was or how to find him in December 1992 or at any time during the pendency of the petitions in the Probate Court. This is not merely a matter of the court drawing an adverse inference against the plaintiff for his failure to call a witness who he would naturally produce; see State v. Greene, 209 Conn. 458,470-72, 551 A.2d 1231 (1988); Zack v. Guzauskas, 171 Conn. 98,102, 368 A.2d 193 (1976); Broderick v. Shea, 143 Conn. 590,593, 124 A.2d 229 (1956); State v. Fleming, 36 Conn. App. 556,568-570, 651 A.2d 1341, cert. denied, 233 Conn. 913,659 A.2d 186 (1995); but of the plaintiff's failure to bear his burden of proof by a fair preponderance that his failure to obtain notice of the Probate Court proceedings was the product of the defendant's failure to use reasonable diligence to locate him. It is senseless to vacate a judgment because the defendant did not undertake an inquiry where the evidence does not prove that such an inquiry could have borne fruit. "`The law does not require a party to engage in an act that would be futile. Vachon v. Tomascak, 155 Conn. 52,57, 230 A.2d 5 (1967); Connecticut Light Power Co. v. Costello,161 Conn. 430, 441, 288 A.2d 415 (1971).'" Rokalor v. ConnecticutCT Page 7312Eating Enterprises, 18 Conn. App. 384, 392, 558 A.2d 265 (1989)."
It is evident that during 1992, indeed during much of the period between 1990 and 1993, the plaintiff did not want to be located by the defendant. In this he succeeded. But "[p]arties cannot thus, by their seclusion from the means of information, claim exemption from the laws that control human affairs, and set up a right to open up all the transactions of the past. The world must move on. . . ." Case of Broderick's Will, of88 U.S. (21 Wall.) 503, 519, 22 L.Ed. 599, 605 (1874).
 IV
The plaintiff also claims that the defendants fraudulently procured the Probate Court decrees terminating his parental rights and approving the adoption of the child by the defendant Frank Joseph Cappiello. "General Statutes § 45-9 [now § 45a-24] provides that a final decree of the Probate Court does not prevent the Superior Court from making inquiry into allegations of fraud." (Footnote omitted.) Conti v. Murphy, 23 Conn. App. 174,177, 579 A.2d 576 (1990). "`Fraud is not be presumed, but must be strictly proven. The evidence must be clear, precise, and unequivocal.' Puro v. Henry, 188 Conn. 301,308, 449 A.2d 176 (1982)." Connell v. Colwell, 214 Conn. 242,252, 571 A.2d 116 (1990). The plaintiff has not nearly satisfied this exacting burden of proof.
Judgment may enter for the defendants.
BY THE COURT
Bruce L. LevinJudge of the Superior Court